No. 2019-2211

_____

*In the*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

## CLAIMANT-APPELLANT'S BRIEF

*Re*

_____

## BRUCE R. TAYLOR,

Claimant-Appellant,

*versus*

## ROBERT L. WILKIE,
Secretary of Veterans Affairs,

Respondent-Appellee.

_____

**ON APPEAL FROM THE
UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS
IN VET.APP. NO. 17-2390, JUDGE WILLIAM S. GREENBERG,
JUDGE AMANDA L. MEREDITH, JUDGE JOSEPH L. FALVEY, JR..**

_____

KENNETH M. CARPENTER
Carpenter, Chartered
1525 Southwest Topeka Boulevard
Post Office Box 2099
Topeka, Kansas 66601
785-357-5251

Attorney for Claimant-Appellant

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

TAYLOR V. DVA, 2019-2211

**Certificate of Interest**

Counsel for the Claimant-Appellant certifies the following:

1.    The full name of every party represented by me is:

Bruce R. Taylor.

2.    Name of Real Party in interest (please only include any real party in interest NOT identified in Question 3) represented by me is:

Same.

3.    Parent corporations and any publicly held companies that own 10 percent or more of stock in the party:

None.

4.    The names of all law firms and the partners or associates that appeared for the party or *amicus* now represented by me in the trial court or agency or are expected to appear in this Court **(and who have not or will not enter and appearance in this case)** are:

Mark B. Jones
Attorney at Law
P.O. Box 579
Standpoint, Idaho 83864
Phone: 208 263 0886

5.    The title and number of any case known to counsel to be pending in this or

any other court or agency that will directly affect or be affected by this court's

decision in the pending appeal. *See* Fed.Cir.R. 47.4(a)(5) and 47.5(b). (The

parties should attach continuation pages as necessary):

None.


Date: October 30, 2019          /s/ Kenneth M. Carpenter
                                Kenneth M. Carpenter
                                **CARPENTER, CHARTERED**
                                1525 SW Topeka Blvd, P.O. Box 2099
                                Topeka, Kansas 66601-2099
                                (785) 357-5251
                                carpgh@mindspring.com

# Table of Contents

**Page**

Certificate of Interest. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-iv

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v-vi

Statement of Related Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Subject-Matter and Appellate Jurisdiction. . . . . . . . . . . . . . . . . . . . 1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      A.      Nature of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      B.      Statement of Facts, Course of Proceedings and Disposition Below. . . . 2

Summary of the Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Arguments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.      Standard for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     The secrecy agreement the Army required Mr. Taylor to sign ultimately resulted in a denial of his right to due process. . . . . . . . . . . . . . . . . 8

      A.      Due process principles apply to veterans benefits claims. . . . . . . . . . 10

      B.      Mr. Taylor is entitled to due process to cure his loss of benefits. . . . . 13

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Addendum - CAVC Panel Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

                                                                    Page

Certificate of Service............................................. 22

Certificate of Compliance.......................................... 22

## Table of Authorities

**Page**

### Decisions

*Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Burks-Marshall v. Shalala*, 7 F.3d 1346 (8th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cushman v. Shinseki*, 576 F.3d 1290 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . 10, 14, 19

*Edwards v. Peake*, 22 Vet. App. 29 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Gilbert v. Derwinski*, 1 Vet. App. 49 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gonzalez v. Sullivan*, 914 F.2d 1197 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Bailey*, 182 F.3d 860 (Fed. Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*Jernigan v. Shinseki*, 25 Vet. App. 220 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mackey v. Montrym*, 443 U.S. 1 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Mathews v. Eldridge*, 424 U.S. 319 (1976). . . . . . . . . . . . . . . . . . 10, 13, 15, 16, 18, 19

*Morris v. Derwinski*, 1 Vet. App. 260 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Morrissey v. Brewer*, 408 U.S. 471 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Prenzler v. Derwinski*, 928 F.2d 392 (Fed. Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ribaudo v. Nicholson*, 21 Vet. App. 137 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Sneed v. Shinseki*, 737 F.3d 719 (Fed. Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Page*

*Thurber v. Brown*, 5 Vet. App. 119 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

## Statutes

38 U.S.C. § 5110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 13

38 U.S.C. § 5110(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

38 U.S.C. § 7292(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

38 U.S.C. § 7292(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 8

38 U.S.C. § 7292(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

38 U.S.C. §7292(d)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

38 U.S.C. §7292(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

## Other

U. S. Const. amendment V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

**Statement of Related Cases**

Pursuant to Fed. Cir. R. 47.5, the undersigned counsel states that no other appeal has been taken in this case in or from the United States Court of Appeals for Veterans Claims ("Veterans Court") before this Court or any other appellate court.

Undersigned counsel further states that he is unaware of any cases pending before this Court which would directly affect this Court's decision in this appeal.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Statement of Subject-Matter and
## Appellate Jurisdiction

On April 5, 2019, the Veterans Court issued a panel decision that affirmed the adverse decision of the Board of Veterans' Appeals ("Board") dated April 14, 2017.  On June 28, 2019, Mr. Taylor timely appealed the Veterans Court decision to this Court. This Court has jurisdiction over Mr. Taylor's appeal pursuant to 38 U.S.C. §§ 7292(a), (c).  The issues on appeal are entirely issues of law.  The Veterans Court decision appealed from is final.

## Statement of the Issue

Whether the secrecy agreement, which Mr. Taylor was required to sign

by the Army, ultimately resulted in a denial of his right to due process?

## Statement of the Case

### A.     Nature of the Case.

This appeal involves a veteran who, while on active duty in the United States Army in 1969, volunteered to participate in chemical agent exposure studies at the Edgewood Arsenal in Edgewood, Maryland (Edgewood Program).  As a result, Mr. Taylor was injected with various test chemicals, including the psycho-tropic experimental drug "EA 3547."  At the time, Mr. Taylor signed an oath vowing not to disclose his participation in, or any information about the Edgewood Program, under penalty of court-martial or prosecution.  As a direct result of his adherence to this nondisclosure

-1-

agreement, Mr. Taylor did not file a claim at his discharge from service for his resulting service-incurred disabilities.

In 2006, the Department of Defense (DoD) declassified the names of the servicemen and women who had volunteered for the Edgewood Program. In June of that year, VA sent Mr. Taylor a letter advising him that DoD had given permission for those identified to disclose to health-care providers information about their involvement in the Edgewood Program that affected their health. This letter also advised Mr. Taylor that he could file claims for benefits for any chronic health conditions that he believed were related to his participation in the Edgewood Program. In February 2007, within one year of VA's June 2006 letter, Mr. Taylor filed a claim based on his disability from post-traumatic stress disorder ("PTSD").

At issue in this appeal is whether the secrecy agreement, which the Army required Mr. Taylor to sign, ultimately resulted in a denial of his right to due process.

### B.    Statement of Facts, Course of Proceedings and Disposition Below.

Mr. Taylor served on active duty in the U.S. Army from January 1969 to September 1971, including service in Vietnam. Appx28.[1] While on active duty he volunteered to participate in chemical agent exposure studies conducted by the Edgewood Program. Appx29-31. Mr. Taylor was required to sign a secrecy oath

---

[1] References to the Joint Appendix to be filed by the Appellant with his reply brief are cited herein as "Appx____ ."

vowing not to disclose his participation in, or any information about the Edgewood Program. Any violation of this oath was subject to the penalty of court-martial or prosecution. Appx95-114.

In 2006, the DoD declassified the names of the servicemen and women who had volunteered for the Edgewood Program. Then in June of that year VA sent Mr. Taylor a letter advising him that DoD had given permission for those identified to disclose to health-care providers information about their involvement in the Edgewood Program that affected their health. Appx32-33. *See also* Appx34-37. VA also advised Mr. Taylor that he could file claims for benefits for any chronic health conditions that he believed were related to his participation in the Edgewood Program. *Id.*

Mr. Taylor then filed a claim with the VA in February 2007 for compensation for his PTSD disability. He asserted his PTSD was "caused in service in 1969 at the chemical research program at Edgewood Arsenal, Maryland." Appx38. To support his claim he provided a report from a private psychologist who diagnosed him with major depressive disorder ("MDD") and PTSD, which the psychologist opined he incurred in service. Appx39-43. The psychologist recommended a full medical and neurological evaluation because "[e]xposure to toxic agents can have effects at different levels, [including to] psychological systems." Appx43. Mr. Taylor later submitted a stressor statement (identifying the Edgewood Program and several other PTSD stressors events) in support of his PTSD claim. Appx44-53. Lastly, he submitted a letter from a

private clinical social worker who also reported that he was experiencing symptoms of PTSD.  Appx44 and Appx54.

During a June 2007 VA PTSD examination, the examiner diagnosed PTSD and MDD, which he opined were "a cumulative response" to Mr. Taylor's participation in the Edgewood Program and his experiences in Vietnam.  Appx55-63.  Relevant to the issues on appeal, the examiner noted: "In later years when [Mr. Taylor] sought treatment, he recalls being turned away because the treating provider did not believe his story about being an experimental subject was a fabrication."  Appx58.  Thereafter, VA granted Mr. Taylor's PTSD service-connection claim in July 2007.  His PTSD was assigned a 70-percent disability rating effective February 28, 2007, the date of his claim.  Appx64-72.  Later that year, VA also granted Mr. Taylor's request for a total rating based on individual unemployability ("TDIU"), which was due to the PTSD, and assigned the same effective date.  Appx73-76.

In response to the VA's compensation awards, Mr. Taylor filed a Notice of Disagreement with the effective date assigned for both the 70-percent rating and the TDIU benefits.  Appx77.  He asserted that he did not file any claim for these benefits earlier because he had "felt constrained from filing for VA benefits by secrecy agreements" he swore to while on active duty.  *Id.*  Not until he received VA's letter advising him that he could file a claim for benefits did he feel free to do so.  *Id.*  Mr. Taylor asserted he was entitled to an effective date of September 7, 1971, the day after

-4-

his discharge from service. *Id.* In his substantive appeal to the Board, he argued more precisely that he was "precluded from obtaining disability benefits [any sooner] because the U.S. Government withheld necessary supporting evidence due to secrecy issues related to the Edg[e]wood Arsenal experiments." Appx78.

The Board subsequently denied Mr. Taylor's request for an earlier effective date ("EED"), *see* Appx79-94, and he continued with his appeal to the Veterans Court. In June 2013, a single-judge Veterans Court memorandum decision vacated the Board's decision, finding that the Board had failed to provide adequate statement of its reasons or bases for its determination. Appx115-118. Specifically, the Veterans Court found: "[T]he Board's lack of stated reasons or bases for its determination that 'there was nothing stopping the [v]eteran from filing [his] claim with the VA earlier,' . . . and its failure to cite to or discuss the language of the secrecy oath in its decision, leaves the Court unable to discern whether the appellant retained his eligibility to file for benefits while the oath was active." Appx117-118.

In April 2017, the Board issued its second decision again denying Mr. Taylor's entitlement to an EED prior to February 28, 2007 for his award of both PTSD and TDIU benefits. Appx119-131. First, the Board noted that Mr. Taylor's PTSD diagnosis was based on multiple stressors, not just on his experiences in the Edgewood Program. Therefore, the Board reasoned, "nothing prevented [him] from filing a claim for PTSD based on those stressors without having to divulge any information" about the

Edgewood Program.  Appx127.  Second, the Board noted further that the record revealed that Mr. Taylor did, in fact, disclose information about the Edgewood Program to a treatment provider long before DoD lifted the restriction on doing so.  *Id.* Accordingly, the Board also reasoned that Mr. Taylor "cannot now claim that [the oath] prevented him from filing a claim for benefits."  *Id.*  Finally, the Board found the law dispositive, explaining that 38 U.S.C. § 5110 provides for an effective date earlier than the date of the claim only under certain limited circumstances not present in this case. *Id.*

Mr. Taylor appealed the Board's adverse decision to the Veterans Court.  On April 5, 2019, the Veterans Court issued its panel decision affirming the Board's decision to deny Mr. Taylor an EED for his PTSD and TDIU benefits.  Appx1-19.  On June 28, 2019, Mr. Taylor timely appealed the Veterans Court's decision to this Court.  Appx21.

## Summary of the Arguments

It is an undisputed fact that the United States Army required Mr. Taylor to sign an agreement swearing an oath not to disclose his participation in, or any information about the chemical agent exposure studies he was part of in the Edgewood Program.  If he did not abide by his oath he was subject to the penalty of a court-martial or prosecution.  This secrecy agreement and oath prevented Mr. Taylor from submitting any application for service- connected compensation in the one-year period following his discharge from service.  In fact, he was prohibited by his oath from seeking any VA

benefits until VA finally advised him in a June 2006 letter that the original secrecy agreement had been terminated by the DoD.  The June 2006 VA letter further advised him that DoD had given its permission for those identified as having participated in the Edgewood Program to disclose to health-care providers information about their involvement in the Edgewood Program that affected their health.  Until Mr. Taylor received this letter, he was duty bound, under penalty of a court-martial or prosecution, from disclosing any injury or other disability caused by his participation in the Edgewood Program.

In its affirmance of the Board's adverse decision, the Veterans Court summarily and incorrectly rejected Mr. Taylor's constitutional claim that he was denied due process as a result of being bound by the secrecy agreement and oath with the Army.  Mr. Taylor asks that this Court to review *de novo* the decision of the Veterans Court to determine whether the secrecy agreement signed by Mr. Taylor under penalty of a court-martial or prosecution from disclosing his participation in the Edgewood Program resulted in a denial of due process.

## Arguments
### I.
### Standard for Review.

This Court may decide all relevant questions of law in an appeal from a decision by the Veterans Court.  38 U.S.C. §7292(d)(1).  This Court reviews legal determinations of the

Veterans Court *de novo.  See Prenzler v. Derwinski*, 928 F.2d 392, 393 (Fed. Cir. 1991).  In doing so, this Court may "affirm or if the decision of the Court of Appeals for Veterans Claims is not in accordance with law, . . . modify or reverse the decision of the Court of Appeals for Veterans Claims or . . . remand the matter as appropriate." 38 U.S.C. §7292(e)(1).

In accordance with this Court's inherent duty to uphold the Constitution of the United States, this Court has concluded that Congress expressly granted this Court, in subsections (c) and (d) of 38 U.S.C. § 7292, jurisdiction to address constitutional issues that are presented to this Court.  *In re Bailey*, 182 F.3d 860, 867 (Fed. Cir. 1999).  This Court's jurisdiction over constitutional issues exists even in the absence of a specific challenge to the validity of a statute or regulation or interpretation thereof.  *Id.*

## II.

### The secrecy agreement the Army required Mr. Taylor to sign ultimately resulted in a denial of his right to due process.

The Veterans Court held that Mr. Taylor did not present a valid claim for relief based on the VA's denial of due process in its adjudication of his benefits claim. Principally, the Veterans Court found that he had not cited to any legal authority to support a finding that he was denied due process.  Appx5.  The Veterans Court explained its decision to summarily dispose of Mr. Taylor's due process claim as follows:

> Here, the appellant asks the Court to find that, under the circumstances of this case, he had a protected property

interest in VA benefits before he filed a claim, specifically during the more than 35 years between his September 1971 discharge from service and his February 2007 claim for benefits for PTSD. Appellant's Br. at 12-16. The authorities on which the appellant relies for this proposition, 38 U.S.C. § 1710 and *Veterans for Common Sense v. Shinseki* (*VCS*), 644 F.3d 845 (9th Cir. 2011), vacated on rehearing *en banc*, 678 F.3d 1013 (9th Cir. 2012), are inapposite. *See* Appellant's Br. at 12-13. The panel decision in *VCS*, which had addressed whether veterans may have a property interest in VA-provided health care, was vacated by the *en banc* United States Court of Appeals for the Ninth Circuit (Ninth Circuit), which determined that it did not have jurisdiction to consider *VCS*'s allegations concerning VA's provision of mental health services. *VCS*, 678 F.3d at 1028. Also, section 1710 pertains to "[e]ligibility for hospital, nursing home, and domiciliary care," 38 U.S.C. § 1710, and does not speak to the matter at issue here—the effective date for the award of benefits. Further, the appellant cites no authority that establishes that a person has a property right in disability benefits before a claim is filed, nor does he articulate a legal theory for such a proposition. The Court thus need not address this argument further. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain undeveloped arguments); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (*en banc*), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

*See* Appx5 (internal footnote omitted). Mr. Taylor concedes that the authority he cited and relied upon before the Veterans Court did not support his claim. However, the Veterans Court still erred in not finding a due process violation in this case for another reason.

Mr. Taylor asserts that the Veterans Court took too narrow a view of his allegation that he was denied due process. The broader view shows that Mr. Taylor asserts before

-9-

this Court a free-standing constitutional claim that he was denied due process. *See In re Bailey*, 182 F.3d 860, 867 (Fed. Cir. 1999). What the Veterans Court overlooked in this case is that "due process" is a "flexible" concept.

### A.    Due process principles apply to veterans benefits claims.

In *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009), this Court held that a veteran's entitlement to disability benefits is a property interest protected by the Due Process Clause. Citing to *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), in *Cushman* this Court explained that the amount of process that is constitutionally due depends on the situation and generally requires consideration of three distinct factors. The first *Mathews* factor to consider is "the private interest that will be affected by the official action." *See Mathews*, 424 U.S. at 335. The second factor for consideration in the *Mathews*' test is "the risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* The third *Mathews* factor for consideration is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.*

In applying the three-prong *Mathews* test, the Court is meant to be guided by the general principle that "due process" is a flexible concept. That is, the determination of the degree of due process that is necessary to ensure fundamental fairness does not require that "the procedures used to guard against an erroneous deprivation . . . be so comprehensive

as to preclude any possibility of error." *Mackey v. Montrym*, 443 U.S. 1, 13 (1979). Rather, the Supreme Court cautioned that "due process is flexible and calls for such procedural protections as the particular situation demands." *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Applying these concepts to Mr. Taylor's case, it is clear his situation before VA called for him to confront extraordinary circumstances. Therefore, his assertion that his due process rights were violated should be considered in the most sympathetically "flexible" light as possible. He was confronted with having been sworn to secrecy about his participation in the Edgewood Program and thus prohibited from revealing anything about the adverse impact this caused to his physical and mental health. Accordingly, his case should have compelled the Veterans Court to extend the utmost "flexibility" when it considered what due process and procedural protections were required. That is, flexibility extended in his case should have been ~~which are~~ commensurate with the particular demands of Mr. Taylor's situation.

Just before his graduation from basic training Mr. Taylor was shown a recruiting film and heard a presentation from a group of people who were seeking volunteers for the Edgewood Project. Afterwards he volunteered to participate. However, as a precondition to his participation, he was required to sign an agreement not to disclose his participation in the Edgewood Program. The consequences of this secrecy agreement had far reaching consequences and implications regarding Mr. Taylor's ability to file an application for

compensation for the disability which resulted from his participation in the Edgewood Program.

The due process clause "requires that when an individual is to be deprived of a property interest as a result of federal government action, the aggrieved party must be provided with notice and an opportunity to be heard." *Thurber v. Brown*, 5 Vet.App. 119, 122 (1993) (citing *Mathews, supra*). The federal government action in this case that deprived Mr. Taylor of his property interest in veterans benefits was the requirement that he sign the secrecy agreement regarding his participation in the Edgewood Program. It is indisputable that Mr. Taylor was an aggrieved party deprived of a property interest because of the secrecy agreement that bound him. Because of the secrecy agreement he was prohibited from filing any claim for service-connected disability compensation until 2006, when the VA informed him that his oath of secrecy was no longer binding.

The VA's denial of Mr. Taylor's due process rights occurred after he was released from the secrecy agreement. At this time he attempted to recover the VA benefits he had been prevented from receiving since 1971 because he was not allowed to disclose to any health-care providers information about his involvement in the Edgewood Program that affected his health. Appx32-33. Following his release from the secrecy agreement in February 2007, Mr. Taylor filed a claim for compensation benefits for his PTSD, which he asserted was "caused in service in 1969 at the chemical research program at Edgewood Arsenal, Maryland." Appx38. Although the VA granted his claims for benefits for PTSD

and a TDIU rating, both awards were made effective from February 28, 2007, the date he submitted these claims after he was released from the secrecy agreement. *See, respectively,* Appx64-72 and Appx73-76. It is at this point that Mr. Taylor's injury from being deprived of a property interest as a result of federal government action occurred. He could not obtain an EED prior to February 2007 for his award of benefits based on the provisions of 38 U.S.C. § 5110. This statute unequivocally precludes an effective date for an award of VA benefits prior to the date of claim. Because of § 5110, Mr. Taylor was deprived of his property interest in the VA benefits he would have been entitled to receive from the day following his discharge from service in 1971 had the secrecy agreement he was required to sign by the Army not precluded him from doing so.

### B.    Mr. Taylor is entitled to due process to cure his loss of benefits.

The three-prong test set out in *Mathews, supra,* to determine whether a veteran can successfully invoke the Due Process Clause to secure relief from the federal government's actions to deprive the veteran of a property interest, favors Mr. Taylor. The first of the *Mathews* factors—the private interest affected by the official action— clearly favors Mr. Taylor. He lost his entitlement to years of compensation benefits for injuries he incurred on active duty serving his country. Congress intended that these benefits were to have been bestowed upon Mr. Taylor on behalf of a grateful nation. Thus, these benefits—the "private interest at stake"—was both significant and obvious: "A [v]eteran's disability

benefits are nondiscretionary, statutorily mandated benefits." *Cushman*, 576 F.3d at 1298; *see also Ribaudo v. Nicholson*, 21 Vet. App. 137, 163 (2007) (*en banc*) (Schoelen, J., dissenting) (stating that the VA motto, a quote from President Abraham Lincoln, reflects a core value of our Nation, which is "[t]o care for him who shall have bourne the battle, and for his widow, and his orphan.").

Indeed, in 1988 Congress passed the Veterans' Judicial Review Act and the Veterans' Benefits Improvement Act. This legislation established for the first time judicial review for veterans' benefits claims. In doing so, "Congress emphasized the historically non-adversarial system of awarding benefits to veterans and discussed its intent to maintain the system's unique character." *See Hodge v. West*, 155 F.3d 1356, 1362 (Fed. Cir. 1998) (referring to H.R. Rep. No. 100-963, at 13 (1988), reprinted in 1988 U.S.C.C.A.N. 5782, 5794-95). "The veterans benefits scheme is thus 'imbued with special beneficence from a grateful sovereign'" *Sneed v. Shinseki*, 737 F.3d 719, 728 (Fed. Cir. 2013) (quoting *Bailey v. West*, 160 F.3d 1360, 1370 Fed. Cir. 1998) (Michel, J., concurring)). Therefore in this context, "the importance of systemic fairness and the appearance of fairness carries great weight," *Hodge*, 155 F.3d at 1363. "It is in recognition of our debt to our veterans that society has through legislation taken upon itself the risk of error when, in determining whether a veteran is entitled to benefits, [the veteran prevails if] there is an 'approximate balance of positive and negative evidence.' By tradition and by statute, the benefit of the doubt belongs to the veteran." *See Gilbert v. Derwinski*, 1 Vet. App. 49, 54 (1991).

In light of the foregoing context, Mr. Taylor's ability to file for VA benefits was, and is a "substantial" property interest. This reality weighs heavily in favor of ensuring that an eligible veteran for VA disability benefits receives his or her benefits at the earliest possible effective date. Unfortunately in Mr. Taylor's case, under the provisions of § 5110(a), this effective date cannot be before the date of an application for the benefits. The secrecy agreement the Army required Mr. Taylor to sign impaired his ability to make and support an application for VA benefits without violating the terms of this agreement. The special beneficence to be afforded to our nation's veterans is inconsistent with, and cannot tolerate a secret agreement with the Army such as occurred in Mr. Taylor's case. The effect of which would be to preclude a veteran from securing disability benefits because the veteran is prevented from disclosing what occurred while on active duty. This is especially so when what occurred while on active duty, and is being kept secret, caused the veteran to incur a profound and lifelong disability.

Consideration of the second *Mathews* factor also favors Mr. Taylor. When he signed the secrecy agreement with the Army "the risk" that he would be "erroneously deprived" of his property interest in receiving VA benefits was a foregone result. *Mathews* at 335, *supra.* But for the secrecy agreement, and the risk of incurring the penalty of a court-martial or prosecution if he failed to adhere to it, Mr. Taylor would have been able to apply for VA benefits and inform the VA about the disabilities he incurred as a result of his participation

in the Edgewood Program.  However, because of the secrecy agreement, he was effectively barred from applying for and receiving any VA disability benefits.  This outcome is the equivalent of the service department demanding a waiver from service members of their right to ever seek VA benefits.

Consequently, the facts of Mr. Taylor's case are clearly distinguishable from the facts in *Morris v. Derwinski*, 1 Vet.App. 260 (1991).  In *Morris*, the Veterans Court, in part, rejected the appellant's due process argument that he was never notified that claims are subject to abandonment.  This was so, the Veterans Court explained, because "everyone dealing with the Government is charged with knowledge of federal statutes and lawfully promulgated agency regulations."  *See Morris*, 1 Vet.App. at 265 (citing *Fed. Crop Ins. Corp., v. Merrill*, 332 U.S. 380, 384-85 (1947)).  Mr. Taylor's case is not a matter involving whether a claimant is properly charged with knowledge of the relevant law.  Rather, the Army compelled Mr. Taylor not to disclose what occurred in the Edgewood Program under penalty of a court-martial or prosecution.  The filing of Mr. Taylor's application for VA benefits was thereby delayed for more than 35 years.  Not until he was released from his secrecy agreement with the Army was it even possible for him to submit this application.

The third, and final *Mathews* factor to consider is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews* at 335.  This factor

also supports Mr. Taylor and his effort to secure a due process remedy.  It is difficult to conceive of any significant financial or administrative burden incurred by the federal government as a result of the Army subjecting Mr. Taylor to a secrecy agreement about his participation in the Edgewood Program.  There would have been no burden whatsoever on the Army to have included in the secrecy agreement with Mr. Taylor notice that he was waiving his right to apply for VA benefits after he left the service.  *See generally Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990)("Requiring notices to accurately state how a claimant might appeal an initial decision does not impose a significant financial or administrative burden on the Secretary.").

The Army had an affirmative obligation not to mislead Mr. Taylor about his ability to seek VA benefits.  As this Court stated in *Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006), "[t]he government's interest in veterans cases is not that it shall win, but rather that justice shall be done, that all veterans so entitled receive the benefits due to them."  *See Barrett*, 466 F.3d at 1044.  Moreover, once the Army solicited Mr. Taylor's participation in the Edgewood Program, the government assumed the responsibility of providing him with accurate information about his right to seek VA benefits for a disability that might result from his participation in the Edgewood Program.  It is unclear how Mr. Taylor's participation in the Edgewood Program would provide the Army with permission to mislead him about his right to apply for VA disability benefits.  If the Army had provided him with accurate information about this it would have imposed no fiscal or administrative

-17-

burden on the Army.

Upon consideration of the substantial private interest at stake; the risk of erroneous deprivation inherent with the secrecy agreement the Army required Mr. Taylor to sign; and the absence of any fiscal or administrative burden on the Army to provide accurate information about his right to disclose his participation in the Edgewood Program if he had a resulting disability from such participation, Mr. Taylor clearly was entitled to due process that he did not receive. *Mathews, supra.* Therefore, this Court must hold that the governmental action by the Army to require Mr. Taylor to sign the secrecy agreement about his participation in the Edgewood Program deprived him of his substantial property interest in VA benefits. In doing so the Army failed to satisfy the requirements of procedural due process guaranteed to Mr. Taylor by the Fifth Amendment to the U.S. Constitution.

To find that Mr. Taylor's due process rights were violated in this case it is not necessary for this Court to first determine whether he relied to his detriment on the Army's requirement that he sign a secrecy agreement about his participation in the Edgewood Program. This is manifest because as soon as he was able to file a claim with VA for disability benefits Mr. Taylor did so. The record of proceedings before the Secretary clearly demonstrates that Mr. Taylor chose not to file a claim for his post-service disabilities because he understood the secrecy agreement the Army required him to sign was binding and subjected him to potential prosecution. *See, e.g., Burks-Marshall*, 7 F.3d at 1349-50

-18-

(although the claimant alleged that the notice of denial "gave the strong impression that her claims would not be lost if she filed a new claim later, rather than immediately appealing," the claimant lacked standing to raise a due process issue based on defective notice because she did "not say that after reading the notice she understood it to mean that she could apply again at any time for benefits for the periods involved in her denied claims, and for that reason, she decided to forego further review at the time"); *cf. Jernigan v. Shinseki*, 25 Vet. App. 220, 229 (2012) (appellant failed to demonstrate detrimental reliance on purportedly defective notice regarding the time to return a formal application form, where record was entirely silent for six years and the appellant offered no explanation for the delay).

The Due Process Clause of the Fifth Amendment of the U.S. Constitution guarantees that a person will not be deprived of life, liberty, or property without due process of law, requiring notice and a meaningful opportunity to be heard. U.S. CONST. Amend. V; *see also Mathews v. Eldridge* at 332-33. Entitlement to veterans benefits is a property interest protected by the Fifth Amendment's Due Process Clause because veterans benefits are mandated by statute and are nondiscretionary in nature. *Cushman v. Shinseki* at 1298. "Notice is constitutionally sufficient if it is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Edwards v. Peake*, 22 Vet.App. 29, 32 (2008) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)), *aff'd sub nom.*

*Edwards v. Shinseki*, 582 F.3d 1351 (Fed. Cir. 2009). In light of the foregoing law, this Court should find that Mr. Taylor's due process rights were violated in this matter and provide him with appropriate relief.

## Conclusion

For the foregoing reasons, the Court should reverse the decision of the Veterans Court and instruct the Veterans Court to vacate the Board's April 14, 2017 decision that denied Mr. Taylor entitlement to an effective date prior to February 28, 2007, for the award of benefits for his PTSD and his TDIU rating. Further, the Court should instruct the Veterans Court to direct the Board to determine, based upon the facts found, the degree of disability Mr. Taylor experience from the day following discharge to the current effective date of February 28, 2007.

Respectfully Submitted,

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com
Attorney for Claimant-Appellant
Bruce Taylor

**ADDENDUM - CAVC PANEL DECISION**

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-2390

Bruce R. Taylor, Appellant,

v.

Robert L. Wilkie,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued March 6, 2019                                        Decided April 5, 2019)

*Mark B. Jones*, of Sandpoint, Idaho, for the appellant.

*Nicholas R. Esterman*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before GREENBERG, MEREDITH, and FALVEY, *Judges*.

MEREDITH, *Judge*, filed the opinion of the Court.   GREENBERG, *Judge*, filed a dissenting opinion.

MEREDITH, *Judge*: The appellant, Bruce R. Taylor, through counsel appeals an April 14, 2017, Board of Veterans' Appeals (Board) decision that denied entitlement to an effective date prior to February 28, 2007, for the award of benefits for post-traumatic stress disorder (PTSD) and for a total disability rating based on individual unemployability (TDIU).   Record (R.) at 3-15.   This appeal is timely, and the Court has jurisdiction to review the Board's decision pursuant to 38 U.S.C. §§ 7252(a) and 7266(a).   The matter was referred to a panel of the Court on October 30, 2018, and oral argument was held on March 6, 2019.   For the following reasons, the Court will affirm the Board's decision.

## I. BACKGROUND

The appellant served on active duty in the U.S. Army from January 1969 to September 1971, including service in Vietnam.   R. at 206.   There is no dispute that, during service, the appellant volunteered to participate in chemical agent exposure studies at the Edgewood Arsenal

in Edgewood, Maryland (Edgewood Program), *see* R. at 2692 (describing the study), nor is there any dispute that he signed an oath vowing not to disclose his participation in or any information about the study, under penalty of court martial or prosecution, *see* R. at 10-11.

In 2006, the Department of Defense (DOD) declassified the names of the servicemen and women who had volunteered for the Edgewood Program and, in June of that year, VA sent the appellant a letter advising him that DOD had given permission for those identified to disclose to health care providers information about their involvement in the Edgewood Program that affected their health. R. at 2695-97. VA also advised the appellant that he could file claims for benefits for any chronic health conditions that he believed were related to his participation in the Edgewood Program. *Id.* In August and September 2006, VA sent training letters to the Veterans Health Administration and the regional offices (ROs) outlining the procedures for handling claims filed by Edgewood Program veterans. *See* R. at 2649-90, 2691-94.

In February 2007, the appellant filed a claim for benefits for PTSD, which he asserted was "caused in service in 1969 at the chemical research program at Edgewood Arsenal, Maryland." R. at 2646. In support of his claim, he provided a report from a private psychologist who diagnosed him with major depressive disorder and PTSD and recommended a full medical and neurological evaluation because "[e]xposure to toxic agents can have effects at different levels, [including to] psychological systems." R. at 2614. The appellant later submitted a stressor statement (identifying the Edgewood Program and several additional stressors) and a letter from a private clinical social worker who noted that the appellant was experiencing symptoms of PTSD. R. at 2574-84.

During a June 2007 VA PTSD examination, the examiner diagnosed PTSD and major depressive disorder, which he opined were "a cumulative response" to the appellant's participation in the Edgewood Program and his experiences in Vietnam. R. at 2311. Relevant to the issues on appeal, the examiner noted: "In later years when [the appellant] sought treatment, he recalls being turned away because the treating provider believed his story about being an experimental subject was a fabrication." R. at 2307. The RO granted the appellant's claim for benefits for PTSD in July 2007 and assigned a 70% disability rating effective February 28, 2007, the date of his claim. R. at 2282-90. Later that year, the RO granted the appellant's request for TDIU and assigned the same effective date. R. at 2247-59; *see* R. at 2274.

The appellant filed a Notice of Disagreement with the effective date assigned for both benefits, asserting that he had "felt constrained from filing for VA benefits by secrecy agreements"

until he received VA's letter advising him that he could file a claim for benefits.  R. at 2233-34.  He requested an effective date of September 7, 1971, the day after his discharge from service.  *Id.*  In his Substantive Appeal to the Board, the appellant argued that he was "precluded from obtaining disability benefits because the U.S. Government withheld necessary supporting evidence due to secrecy issues related to the Edg[e]wood Arsenal experiments."  R. at 2211.

The Board subsequently denied the appellant's request for an earlier effective date, R. at 1904-20, and the appellant appealed, through current counsel.  In June 2013, in a single-judge memorandum decision, the Court vacated the Board's decision, finding that the Board had failed to provide adequate reasons or bases for its determination.  R. at 702-06.  Specifically, the Court found: "[T]he Board's lack of stated reasons or bases for its determination that 'there was nothing stopping the [v]eteran from filing [his] claim with the VA earlier,' . . . and its failure to cite to or discuss the language of the secrecy oath in its decision, leaves the Court unable to discern whether the appellant retained his eligibility to file for benefits while the oath was active."  R. at 705-06.

In April 2017, the Board issued the decision on appeal, denying entitlement to an effective date prior to February 28, 2007, for the award of benefits for PTSD and for TDIU.  First, the Board noted that the appellant's PTSD diagnosis is based on multiple stressors, not only on his experiences in the Edgewood Program, and therefore "nothing prevented [him] from filing a claim for PTSD based on those stressors without having to divulge any information" about the Edgewood Program.  R. at 11.  Second, the Board noted that the record reveals that the appellant did, in fact, disclose information about the Edgewood Program to a treatment provider long before DOD lifted the restriction on doing so.  *Id.*  Accordingly, the Board determined that the appellant "cannot now claim that [the oath] prevented him from filing a claim for benefits."  *Id.*  Finally, the Board found the law dispositive, explaining that 38 U.S.C. § 5110 only provides for an effective date earlier than the date of the claim under certain limited circumstances not present in this case.  *Id.*  This appeal followed.

## II. ANALYSIS

### A. Parties' Arguments

On appeal, the appellant contends that his right to file a claim for benefits for PTSD based on his participation in the Edgewood Program was violated "by the same people [who] created his exposure to the traumatizing event, and who now say that he can't file a claim for PTSD even

th[]ough the same agency held [him] to a secrecy agreement until at least 2006." Appellant's Brief (Br.) at 9. More specifically, he asserts that VA has violated his right to procedural due process "by failing to have any process in place by which [he] could make a claim for [benefits] . . . , as a former participant in the Edgewood [P]rogram, prior to the 2006 [declassification], and by the denial of his post[-]2006 claim requesting an earlier effective date." *Id.* at 12. He further argues that the application of section 5110's effective date rule to veterans like him results in VA "hold[ing] their fidelity against them, binding them with a rule meant to be applied to [v]eterans who were not prohibited from filing [claims by virtue of a secrecy oath]." *Id.* at 16. The appellant also posits that, even if he had been willing to risk court martial or prosecution by filing an earlier claim for benefits based on his participation in the Edgewood Program, he would have been unable to substantiate the claim in the absence of declassification of the records. *Id.* at 17. The appellant seeks a remedy in which VA is directed to "allow . . . Edgewood [v]eterans a window during which time they may file a claim for [benefits] for those years where they were precluded from filing such a claim by the VA's official process." *Id.* at 17.

The Secretary responds that the appellant's arguments and prayer for relief are misdirected, as he appears to conflate VA with the executive branch agencies responsible for the Edgewood Program and the secrecy oath. Secretary's Br. at 12. Additionally, the Secretary contends that the appellant did not have a property interest in VA compensation benefits prior to the date on which he filed his claim and, therefore, there could have been no due process violation in this case. *Id.* at 14. Further, the Secretary argues that the appellant has not identified any statute, regulation, policy, or caselaw that prevented him from filing a claim for benefits for PTSD with VA prior to the declassification of his participation in the Edgewood Program. *Id.* at 12-13. The Secretary argues that the exception to section 5110 that the appellant seeks requires congressional intervention and is beyond the Court's authority to provide. *Id.* at 13. To the extent that the appellant seeks equitable relief, the Secretary asserts that the Court lacks the ability to grant such relief. *Id.* at 17. He also contends that the appellant's concern about his ability to substantiate any earlier-filed claim is misplaced, given that his PTSD is based on more than just his participation in the Edgewood Program. *Id.* at 13-14. Accordingly, the Secretary urges the Court to affirm the Board decision.

B. Discussion

*1. Due Process*

The Fifth Amendment to the U.S. Constitution provides that "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). The Court reviews constitutional questions de novo. *Buzinski v. Brown*, 6 Vet.App. 360, 365 (1994).

It is axiomatic that, for a due process violation to exist, there must first exist a protected property interest. "It is well established that disability benefits are a protected property interest and may not be discontinued without due process of law." *Cushman v. Shinseki*, 576 F.3d 1290, 1296 (Fed. Cir. 2009) (citing *Atkins v. Parker*, 472 U.S. 115, 128 (1985); *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)). Nearly 10 years ago, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) considered "the specific question of whether *applicants* for [VA] benefits, who have not yet been adjudicated as entitled to them, possess a property interest in those benefits." *Id.* (emphasis added). That court answered the question in the affirmative, as had "'[e]very regional circuit to address the question'" at that time. *Id.* at 1297 (quoting *Kapps v. Wing*, 404 F.3d 105, 115 (2d Cir. 2005)).

Here, the appellant asks the Court to find that, under the circumstances of this case, he had a protected property interest in VA benefits before he filed a claim, specifically during the more than 35 years between his September 1971 discharge from service and his February 2007 claim for benefits for PTSD. Appellant's Br. at 12-16. The authorities on which the appellant relies for this proposition, 38 U.S.C. § 1710 and *Veterans for Common Sense v. Shinseki* (*VCS*), 644 F.3d 845 (9th Cir. 2011), *vacated on rehearing en banc*, 678 F.3d 1013 (9th Cir. 2012), are inapposite. *See* Appellant's Br. at 12-13. The panel decision in *VCS*, which had addressed whether veterans may have a property interest in VA-provided health care, was vacated by the en banc United States Court of Appeals for the Ninth Circuit (Ninth Circuit), which determined that it did not have jurisdiction to consider VCS's allegations concerning VA's provision of mental health services.[1]

---

[1] In his brief, the appellant cites the en banc Ninth Circuit opinion as the source of a quotation from the earlier panel decision that was vacated on rehearing by the en banc Ninth Circuit. *See* Appellant's Br. at 12 (citing *VCS*, 678 F.3d 1013 (9th Cir. 2012) (en banc), but quoting *VCS*, 644 F.3d at 873).

*VCS*, 678 F.3d at 1028. Also, section 1710 pertains to "[e]ligibility for hospital, nursing home, and domiciliary care," 38 U.S.C. § 1710, and does not speak to the matter at issue here—the effective date for the award of benefits. Further, the appellant cites no authority that establishes that a person has a property right in disability benefits *before* a claim is filed, nor does he articulate a legal theory for such a proposition. The Court thus need not address this argument further. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain undeveloped arguments); *Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

### 2. Equitable Relief

The appellant essentially contends that he believed that he was precluded from filing a claim for benefits prior to 2006 because of the secrecy oath he signed when he agreed to participate in the Edgewood Program.[2] Appellant's Br. at 9. He therefore argues that equity demands that the Court order VA to establish a process by which he and other veterans like him may establish an earlier effective date for the award of benefits as of the date of the injury, in the absence of a prior claim. *Id.* at 14, 21; *see* Oral Argument at 10:47-11:10 (March 6, 2019) (acknowledging that Congress has not authorized payment of benefits under these circumstances and that he is seeking relief on an equitable basis).

The Court's equitable powers, however, are not so broad. In *Burris v. Wilkie*, the Federal Circuit noted that Congress has conferred certain equitable authority on the Secretary under 38 U.S.C. § 503(b) but had not conferred on this Court a similar statutory grant of equitable power. 888 F.3d 1352, 1358-59 (Fed. Cir. 2018). As the Court recently held in *Burkhart v. Wilkie*, although the Federal Circuit in *Burris* "acknowledged th[is] Court's 'authority to grant certain forms of non-substantive equitable relief required to enable the [Court] to carry out its statutory

---

[2] To the extent that the appellant contends that VA is "the same [party that] created his exposure to the traumatizing event" and is the "same agency [that] held [him] to a secrecy agreement," Appellant's Br. at 9, he has not pointed to any evidence that VA was involved in the Edgewood Program or is the agency that required him to sign the secrecy agreement. At oral argument, the Secretary asserted that VA was unaware of the Edgewood Program until it received the declassified list of participants from DOD in 2006. Oral Argument at 23:41-24:10. The Court notes, however, that another court that addressed the issue of VA involvement in the Edgewood Program on a more developed evidentiary record has acknowledged the existence of evidence that the Central Intelligence Agency (CIA) identified VA "as among the suppliers of chemicals used for tests, which, when conducted on humans, were carried out jointly with the Army and Edgewood Arsenal," although that court also acknowledged that there was no evidence "to show that the substances that [VA] provided to [the CIA] were actually used at all, much less that they were used on humans who were service members." *Vietnam Veterans of Am. v. Cent. Intelligence Agency*, No. C 09-0037 CW, 2013 WL 3855688, at *26 (N.D. Cal. July 24, 2013). As discussed below, even if VA had limited involvement in the Edgewood Program, the Court cannot provide the relief the appellant seeks.

grant of jurisdiction,' it cautioned that 'the Veterans Court cannot invoke equity to *expand* the scope of its statutory jurisdiction.'" 30 Vet.App. 414, 426 (2019) (quoting *Burris*, 888 F.3d at 1361). In that regard, the Federal Circuit in *Burris* distinguished the kind of equitable relief that the Court has authority to grant—relief provided by other statutes such as the All Writs Act and interlocutory, procedural relief—from the kind it does not have jurisdiction to grant—"substantive, monetary relief." 888 F.3d at 1361. It is, plainly, the second type of relief that the appellant seeks in this case. *See* Appellant's Br. at 21 ("VA would then *pay the claim* as if it [had] been properly filed as of the date the injury was established" (emphasis added)); R. at 2233-34 (October 2007 NOD in which the appellant asserted that he is entitled to an effective date as of the day after his discharge from service, because his PTSD began in service). Accordingly, although the Court is sympathetic to the appellant's situation, our equitable powers are constrained by statute and controlling caselaw from the Federal Circuit.[3]

### 3. Statutory Relief

The Supreme Court has held that payments of money from the United States Treasury are limited to those authorized by statute, and that, regardless of the equities involved, a claimant cannot be paid benefits where he or she does not meet the statutory eligibility requirements for those benefits and there is no other statutory authority under which to pay him or her. *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990). Section 5110, the statute that governs the assignment of an effective date for an award of benefits, provides:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a) (effective to February 18, 2019). The implementing regulation similarly provides that the effective date generally will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400 (2018).

A Board determination regarding the proper effective date is a finding of fact that will not be overturned unless the Court finds the determination to be clearly erroneous. *Evans v. West*, 12 Vet.App. 396, 401 (1999). A finding of fact is clearly erroneous when the Court, after

---

[3] In the Secretary's brief, he writes that "an equitable remedy lies not with this Court, but may lie with the Secretary, pursuant to his discretionary powers under 38 U.S.C. § 503." Secretary's Br. at 17. Nothing in this opinion precludes the appellant from seeking equitable relief from the Secretary under section 503, if he wishes.

reviewing the entire evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). As with any material issue of fact or law, the Board must provide a statement of the reasons or bases for its determination "adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see* 38 U.S.C. § 7104(d)(1); *Gilbert*, 1 Vet.App. at 56-57.

The Board determined that section 5110 was controlling and dispositive. R. at 11. Accordingly, because the appellant did not file a claim for benefits for PTSD earlier than February 2007, the Board found that February 28, 2007, was the earliest possible effective date for the award of benefits. R. at 11-12.

This Court and the Federal Circuit have considered whether section 5110 is subject to equitable tolling and have found that it is not.[4] *See Andrews v. Principi*, 351 F.3d 1134, 1137-38 (Fed. Cir. 2003) (finding that, although "[e]quitable tolling may be applied to toll a statute of limitations[,] . . . . [section] 5110 does not contain a statute of limitations, but merely indicates when benefits may begin and provides for an earlier date under certain limited circumstances"); *see also Butler v. Shinseki*, 603 F.3d 922, 926 (Fed. Cir. 2010) (reaffirming *Andrews*); *Rodriguez v. West*, 189 F.3d 1351, 1355 (Fed. Cir. 1999) (stating that nothing in 38 U.S.C. §§ 5102 or 7722(d) indicates or suggests a justification for "ignoring the unequivocal command in 38 U.S.C. § 5110(a) that the effective date of benefits cannot be earlier than the filing of an application therefor"); *Noah v. McDonald*, 28 Vet.App. 120, 128-29 (2016) (regarding authorities that the Court determined "operate similar to effective-date provisions for the award of VA benefits," noting that the Federal Circuit has held that the effective date provisions are not subject to equitable tolling). At oral

---

[4] Our dissenting colleague argues that it is not equitable tolling that is at issue, but equitable estoppel, which he asserts prevents the Government "from finding that the appellant filed a claim after the date he was entitled." *Post* at 17. In *Burkhart*, however, this Court expressly rejected the possibility of equitable estoppel in the absence of an "explicit statutory grant[]" of that privilege. 30 Vet.App. at 427. Likewise, the Federal Circuit has held that this Court cannot use equitable estoppel to authorize payment outside of the requirements set out in section 5110. *See McCay v. Brown*, 106 F.3d 1577, 1581 (Fed. Cir. 1997) ("Although equitable estoppel is available against the government, it is not available to grant a money payment where Congress has not authorized such a payment or the recipient doesn't qualify for such a payment under applicable statutes."). Both decisions flow from the Supreme Court's holding in *Richmond*, 496 U.S. at 434, where the Court held that equitable estoppel could not be used to pay money not authorized by a statute. Our colleague is correct that the Supreme Court did not shut the door on all estoppel claims against the government, but it explicitly did so when the claimant seeks monetary relief. *See id.* ("As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds. In this context there can be no estoppel, for courts cannot estop the Constitution.").

argument, the appellant's counsel conceded that there was no statutory authority for the relief the appellant seeks. Oral Argument at 13:31-13:40. The appellant does not dispute that he did not file a claim until February 2007. In the absence of an earlier claim, section 5110 is clear: The effective date for the award of benefits is the date of the claim. *See* 38 U.S.C. § 5110(a). The appellant thus has not demonstrated error in the Board's conclusion.

## III. CONCLUSION

After consideration of the parties' pleadings and a review of the record, the Board's April 14, 2017, decision is AFFIRMED.

GREENBERG, J., dissenting: "This case puts judicial humanity to the test; . . . the Court of Appeals for Veterans Claims [fails] the test." *Aldridge v. McDonald,* 837 F.3d. 1261, 1266 (Fed. Cir. 2016) (Newman, J. *dissenting*). Equity is always available to right a wrong. *See Aldridge v. McDonald*, 27 Vet.App. 392, 394 (2015) (Greenberg, J. *dissenting*). With the greatest possible respect for my eminent colleagues, the injustice done by the Court today requires this dissent.

### I.

The medical experimentations on soldiers administered by the Government at the Edgewood Arsenal are well documented. For twenty years between 1955 and 1975, the United States Army systematically recruited volunteers from among those who had been conscripted or otherwise met their required national military service. The appellant, Bruce Taylor, was a volunteer, anxious to serve the needs of his Country.[5] He was one of 16 volunteers who were given a nerve agent[6] while on a shooting range to test how this chemical affected military

---

[5] The appellant voluntarily joined the Army after his brother was killed in Vietnam. *See* R. at 2305.

[6] EA 3580 N-methyl-4-piperidyl cyclobutylphenylglycolate is an "anticholinergic glycolic acid ester." R. at 2666. Anticholinergics include nerve agents such as sarin and VX, and cause "toxic accumulation of the neurotransmitter acetylcholine." R. at 2666. Symptoms of exposure include those "consistent with acute cholinergic toxicity, including dizziness, frontal headache, blurred vision, lethargy, nausea, stomach pain, vomiting, rhinorrhea, chest tightness, wheezing, fasciculations, sweating on hands and feet, and significantly deceased red blood cell cholinesterase levels." R. at 2666.

performance.[7]  R. at 2337.  The appellant has stated that during the experiment, he thought he was killing people rather than shooting at targets.  R. at 2306.  Records contemporaneous with the testing reflect his complaints of hallucinations, nausea, jumpiness, irritability, sleepiness, dizziness, impaired coordination, and difficulty concentrating.[8]  R. at 2305-06.

## II.

The appellant signed at least two documents, amounting to contracts of adhesion, relating to his participation.  The first was a secrecy oath.  Although the CIA has never provided any of the oaths taken by the soldiers at Edgewood Arsenal, *see Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. 192, 198 (N.D. Cal. 2012), the Government has conceded that the secrecy oaths may have required that a volunteer would

> not divulge or make available any information related to U.S. Army Intelligence Center interest or participation in the [volunteer program] to any individual, nation, organization, business, association, or other group or entity, not officially authorized to receive such information. I understand that any action contrary to the promises of this statement will render me liable to punishment under the provisions of the Uniform Code of Military Justice.

R. at 11.

The appellant also signed a document regarding consent that provided: "The proposed experimental procedure has been explained to me, and I voluntarily agree to participate in this test."  R. at 2337.  The form contains a signature by an "Investigator/and or Physician" acknowledging that "I have explained the proposed experimental procedure in its entirety to the above named volunteer."  R. at 2337.  The record does not reflect whether this signatory was in fact a physician or had any medical training whatsoever.  Nowhere is there even the hint of a suggestion that by volunteering the appellant had forfeited his constitutional and statutory rights to medical benefits and compensation from the United States.

---

[7] The appellant was also a participant in an experiment involving exposure to an agent in a gas chamber, but the record contains less information about this test.  *See* R. at 2306.

[8] The appellant remembers a fellow soldier, who was a terrified test subject, covered in excrement and vomit. R. at 2305.

### III.

After participating in the Edgewood Arsenal experiments, the appellant served all or part of two tours in the Republic of Vietnam from January 1970 to September 1971. *See* R. at 461 (DD Form 214), 2310. A May 5, 1971, service treatment record reflects complaints of "insomnia and flashbacks"; this record has been overwritten and altered. *See* R. at 2306. The appellant has stated that these flashbacks related to his participation as a test subject. R. at 2576. In Vietnam, the appellant experienced numerous stressor events. *See* R. at 2306. The appellant remained true to his oath of secrecy in not applying for compensation.

### IV.

In August 1979, the Army's General Counsel drafted a memorandum to other high-level Army officials and to the Army Surgeon General that acknowledged that "'as a policy matter, some type of notification [to the Edgewood Arsenal experiment subjects about the health consequences of their participation] is necessary.'" *Vietnam Veterans of Am. v. Cent. Intelligence Agency*, 811 F.3d 1068, 1073 (9th Cir. 2016) (quoting August 8, 1979, memorandum). The memorandum stated that the "legal necessity for a notification program is not open to dispute." *Id.*

### V.

The Office of the Deputy Secretary of Defense has admitted that:

> "In the 1990s, several reviews of military human subject research programs from the World War II and Cold War eras noted the common practice of research volunteers signing "secrecy oaths" to preclude disclosure of research information. Such oaths or other non-disclosure requirements have reportedly inhibited veterans from discussing health concerns with their doctors or *seeking compensation from the Department of Veterans Affairs for potential service-related disabilities*."

*Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. at 199-200 (emphasis added) (quoting January 11, 2011, memorandum).

On June 30, 2006, twenty-seven years after the Army recognized the necessity of notification, VA sent out a boilerplate letter to the Edgewood Arsenal participants, including the appellant. R. at 2702-03. The letter acknowledged that participants "may be concerned about releasing classified test information to your health care provider when discussing your health care concerns" and relayed that the Department of Defense has stated:

You may provide details that affect your health to your health care provider. For example, you may discuss what you believe your exposure was at the time, reactions, treatment you sought or received, and the general location and time of the tests. On the other hand, you should not discuss anything that relates to operational information that might reveal chemical or biological warfare vulnerabilities or capabilities.

R. at 2702. The letter also provided that VA was offering a clinical examination to veterans who received the notification letter and that "if you think you suffer from chronic health problems as a result of those tests . . . speak to a VA representative about filing a disability claim." R. at 2703.

## VI.

The appellant filed for service-connected benefits for PTSD based on his participation in the Edgewood Arsenal experiments in February 2007. R. at 2615-24. In June 2007, a VA examiner diagnosed the appellant with PTSD and major depressive disorder, both of which were "considered to be a cumulative response to his participation as a human subject in the Edgewood Arsenal experiments and subsequent re-traumatization in Vietnam." R. at 2311. The examiner noted "[a]fter participating in the experiments, physical symptoms persisted and he had increasing difficulty adjusting to Army life." R. at 2310. The appellant reported that after service he sought treatment for his mental difficulties, but was turned away because the treating provider thought he had fabricated his participation in the Edgewood Arsenal Experiments. R. at 2307. Again, he remained true to his oath.

## VII.

In the decision on appeal, the Board denied the appellant an earlier effective date for three reasons. First, the Board found that the appellant's PTSD diagnosis was based on multiple stressors, including events in Vietnam, concluding that "nothing prevented the Veteran from filing a claim for PTSD based on those stressors without having to divulge any information regarding the Edgewood experiments." R. at 11.

The Board next determined that, even if there was a secrecy oath he violated it when he sought medical treatment after service, but was turned away. R. at 11. The reasoning was that "having divulged information subject to the oath of secrecy in the past, the Board finds that the Veteran cannot now claim it prevented him filing a claim for benefits." R. at 11.

Finally, the Board stated:

> most importantly, and, in fact, dispositive to the outcome of the instant case, the governing statute in this case, 38 U.S.C.A. § 5110, merely prescribes when benefits may begin and provides for an earlier effective date under certain limited circumstances.  It does not allow for equitable tolling, even when based on some malfeasance by the government.

R. at 11 (citing *Andrews (Holly) v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003).  The Board concluded that "no equities, no matter how compelling, can create a right to payment out of the United States Treasury which has not been provided for by Congress.  *See Office of Personnel Management v. Richmond*, 496 U.S. 414, 426 (1990).  The Board has no discretion to award benefits in this matter."  R. at 12.


## VIII.

All these findings were wrong as a matter of law.  The Board's finding that the appellant could have filed for PTSD-related benefits for his service in Vietnam without divulging information related to the Edgewood experiments is a basic Board error and thoughtless.  It is nothing more than a heartless attempt to dehumanize a veteran with an unsubstantiated medical opinion.  *See Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991) (holding that the Board cannot rely on its own medical judgment).  A VA examiner found that these disabilities were "considered to be a cumulative response to his participation as a human subject in the Edgewood Arsenal experiments and subsequent re-traumatization in Vietnam."  R. at 2311.  The Board does not possess the medical expertise to determine that a veteran is capable of untangling stressor events, especially not when a medical examiner has suggested otherwise.  These stressors events have contributed to his current disability including nightmares and flashbacks.  R. at 2308.


## IX.

Next, the fact that the veteran divulged his participation for the purposes of treatment[9] has no bearing on whether the secrecy oath negatively affected his ability to file.  The issue is not

---

[9] The appellant has also admitted that he spoke about the experiments while in Vietnam and to the army lawyer representing him during the course of military justice proceedings.  He stated "I informed my JAG lawyer about Edgewood the experiments and the after effects so to submit these facts as mitigating and extenuation circumstances. I didn't want to get a BCD[(bad conduct discharge)]. I got the usual reception from my JAG that I was crazy and this was a delusion and he referred me to E327 med for a referral to a psychiatrist. Apparently

whether the appellant believed his secrecy oath precluded his ability to seek treatment. Filing a claim for benefits with the Government under a cloud of prosecution is a wholly different proposition from divulging information to a medical provider. It is undisputed that participants of the Edgewood experiments felt constrained to file for VA benefits because of the secrecy oaths. *See Vietnam Veterans of America*, 288 F.R.D. at 199-200.

Further, the oath is important because it supports the appellant's statements that nobody believed him. He could not receive proper treatment for his mental disability, much less file a successful claim for benefits based on his participation in the experiments. The Government does not dispute that the appellant could not have succeeded on his claim prior to his filing, but rather contends that Congress intended for him to have filed a claim in futility.

## X.

Our Court "must do its best, bearing in mind the fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *King v. Burwell*, 135 S.Ct. 2480, 2483 (2015) (internal quotations omitted). Where Congress has chosen to limit earlier effective dates, it has done so expressly. Although Congress has adopted an effective date for "previously denied claims" based on mustard gas exposure, including those who were exposed at Edgewood Arsenal and signed secrecy oaths, Pub. L. No. 115-48, 131 Stat. 996-99, § 502 (2017), nothing has been promulgated for those veterans who felt *prohibited* from filing a claim for benefits.

Absent an express statutory command addressing the appellant's circumstances, 38 U.S.C. § 5110 must be construed in his favor. After all, the veteran's canon, reflecting Congressional intent to presume interpretive doubt in the veteran's favor, has always been consistent, and remains paramount. *See Shinseki v. Sanders*, 556 U.S. 396, 416, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009) (Souter, J., *dissenting*) (stating that Congressional "solicitude for veterans is plainly reflected in the Veterans Judicial Review Act of 1988, 38 U.S.C. § 7251 et seq. (VJRA)], as well as in subsequent laws that 'place a thumb on the scale in the veteran's favor in the course of administrative and judicial review of VA decisions'"); s*ee also Henderson*, 131 S.Ct. at 1205 (declaring that congressional solicitude for veterans is plainly reflected in "the singular

---

they didn't believe a word I said and refused to refer me to a psychiatrist, the over written file speaks for itself." R. at 2577.

characteristics of the review scheme that Congress created for the adjudication of veterans' benefits claims," and emphasizing that the provision "was enacted as part of the VJRA [because] that legislation was decidedly favorable to the veteran").  As Justice Alito has recognized, "[w]e have long applied 'the canon that provisions for benefits to members of the Armed Services are to be construed in the beneficiaries' favor." *Id.* at 1206 (quoting *King v. St. Vincent's Hospital*, 502 U.S. 215, 220-21 N. 9, 112 S.Ct. 570, 116 L. Ed. 2d 578 (1991)). *See United States v. Oregon*, 366 U.S. 643, 647, 81 S. Ct. 1278,6 L.Ed. 2d 575 (1961) ("The solicitude of Congress for veterans is of long standing.").[10]

## XI.

Congress could not have intended to have provided an earlier effective date to those veterans who felt unconstrained by their secrecy oath when filing for VA benefits, but deny them to veterans like the appellant.  We have a duty to properly examine through our inherent constitutional power to apply equitable remedies where Congress has not expressly authorized a result.  *See* U.S. CONST. ART. III, § 2, CL. 1 ("The judicial power extends to all cases, in law and equity"); *American Ins. Co. v. 356 Bales of Cotton*, 26 U.S. 511, 512 (1828) (finding that judicial power extends to all cases in law and equity, arising under the Constitution and the laws of the United States"); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (2011) ("'[W]e do not lightly assume that Congress has intended to depart from established principles' such as the scope of a court's inherent power." (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982))); *Califano v. Yamasaki,* 442 U.S. 682, 705 (1979) ("Absent the clearest command to the contrary from Congress, federal courts retain their equitable power . . .").

---

[10] *See also, e.g., Hayburn's Case*, 2 U.S. 408, 2 Dall. 409, 1 L. Ed. 436 (1792) (describing the attempts of circuit courts to circumvent the unconstitutionality of the Invalid Pensioners Act of 1792); *U.S. ex. rel. Miller v. Raum*, 135 U.S. 200, 204 (1890) (finding that, although "the courts will not interfere with the executive officers of the government in the exercise of their ordinary official duties," the Supreme Court could compel the payment of a veteran's disability pension by mandamus); *Boone v. Lightner*, 319 U.S. 561, 575 (1943) (noting that Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. § 501 *et seq.*, was "always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation"); *Feres v. United States*, 340 U.S. 135 (1950) (considering, but ultimately denying, applicability of the Federal Tort Claims Act, 28 U.S.C. § 1346(b), to service-related injuries); *Johnson v. Robison*, 415 U.S. 361 (1974) (holding that judicial review of constitutional challenges to veterans benefits legislation was available even though Congress had foreclosed judicial review of individual benefits determinations); *Conroy v. Aniskoff*, 507 U.S. 511, 514 (1993) (holding that the Soldiers' and Sailors' Civil Relief Act of 1940 was "unambiguous, unequivocal, and unlimited," without contextual conditions for its protections).

"Equitable remedies are distinguished for their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use," *Sears, Roebuck & Co. v. Camp*, 124 N.J. Eq. 403, 411 (E. & A. 1938) (Heher, J.) (internal quotations omitted).  The ability of a court to right a demonstrated wrong is intrinsic to the basic concept of equitable powers:

> It is universally recognized that equity will not suffer a wrong without a remedy. This maxim is derived, Professor Pomeroy informs us, from the more comprehensive legal maxim that wherever a legal right has been infringed a remedy will be given. The equitable maxim is the source of the entire equitable jurisdiction, whether it be exclusive, concurrent or auxiliary.  *See* 2 Pomeroy Equity Jurisprudence (5th ed., Symons), § 423.

*Gazaille v. McDonald*, 27 Vet.App. 205, 212 (2014) (Greenberg J. *concurring*), quoting *Cona v. Gower*, 89 NJ. Super 510, 516-17 (N.J. Super Ct. Ch. Div 1965) (Matthews, J.S.C.).


## XII.

The Supreme Court expressly rejected adopting a flat rule that estoppel will never lie against the Government; instead, the Court found a grant of monetary relief from the Public Treasury based on the equitable doctrine of estoppel that is contrary to a statutory appropriation was prohibited by the Appropriations Clause of the Constitution.  *Office of Personnel Mgm't*, 496 U.S. at 422-23, citing ART. I § 9, CL. 7.  The Court noted that where Congress wished to recognize claims for estoppel, it knew how to do so.  *Id.* at 428.  This statement, however, is not determinative here.

As concluded by Justices Marshall and Brennan in dissent,

> [w]hen Congress passes a law to provide a benefit to a class of people, it intends and assumes that the Executive will fairly implement that law.  Where necessary to effectuate Congress' intent that its statutory schemes be fully implemented, this Court therefore often interprets the apparently plain words of a statute to allow a claimant to obtain relief where the statute on its face would bar recovery.

*Id.* at 438.

Here, the question is not whether "there's any Congressional authorization to pay benefits for a period prior to when the claim was filed?" *Oral Argument* at 13:30-13:37. Nor is the question, "Do you know any court that says that benefits can be paid without an application?" *Oral Argument* at 13:40-13:50.  The proper inquiry should have been, "has the Government ever

disregarded the rights of one of its favored citizens, a veteran, when Congress has established a long-standing scheme to ensure care and compensation?  This is why we have courts.

For example, by analogy, in *Bivens vs. Six Unknown Named Agents of Federal Bureau*, 403 U.S. 388 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages.  Justice Brennan, writing for the Court stated:

> Of course, the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for the consequences of its violation. But "it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done."

*Id.* at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).


## XIII.

Further, while merely awarding benefits on an equitable basis may run afoul of the appropriations clause, this is not the remedy I would have provided.  The majority and the Board wrongly treat this as a matter of equitable *tolling* of 38 U.S.C. § 5110, instead of equitable *estoppel*.

> Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim. In contrast, the doctrine of equitable estoppel comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.

*Shropshear v. Corporation Counsel of City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001) (Posner, J.).

I would have held that the Government is equitably *estopped* from finding that the appellant filed a claim after the date he was entitled.  Such a holding is necessary to effectuate Congressional intent.  Congress created an *entitlement* system for veterans; not a system where there is the requirement that a claimant file a futile claim.


## XIV.

Facts like these must have been the reason that the majority in *Office of Personnel Mgm't, v. Richmond,* expressly refused to find that a private citizen could never succeed on a claim of estoppel against the Government.  496 U.S. at 422-23.  The affirmative misconduct standard

addressed, but not rejected in that case must be adopted here. *See Office of Personnel Mgm't,* 496 U.S. at 421-22.

XV.

The Government has taken the position that participants like the appellant were provided informed consent regarding the Edgewood Arsenal Experiments. *See* R. at 2700 ("The Army obtained the voluntary consent of volunteers and provided them with study information."). Yet, VA has also acknowledged that "there was little scientific or medical information on long-term health effects from these exposures." R. at 2671. The informed consent document signed by the appellant and a Government "investigator and/or physician" was a contract. R. at 2337. In every contract there is an implied duty of good faith and fair dealing. *See Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 118 N.E. 214 (1917) (Cardozo, J.). The Government has violated this duty. There is no evidence that the appellant was told that the potential long-term effects of his participation were unknown. Given that the long-term effects of the testing were yet to be determined, it is impossible that the Government *could* have obtained informed consent from the appellant.

The Government then waited more than thirty years to recognize the appellant's participation in these permanently disabling experiments. Even if it could be argued that there was a legitimate military purpose for concealing his participation, the *necessity* of *notifying* the appellant of potential long-term effects of the experiments was recognized by the Army in the 1970's; the appellant received notification in *June 2006*. C.f. *Vietnam Veterans of Am. v. C.I.A.*, 811 F.3d at 1073 *with* R. at 2702-03. As recognized by the Secretary of Defense, this notice not only served the purpose of informing the appellant of potential health consequences, but also acknowledged that the Edgewood Arsenal veterans felt inhibited to pursue claims for benefits. *Vietnam Veterans of America v. C.I.A.*, 288 F.R.D. at 199-200. The Government, through affirmative misconduct followed by reckless inaction, stopped the appellant from filing a successful claim. Congress could not have intended the appellant to be assigned the effective date of the date he filed here and our Court should have made clear that the extreme facts here warrant an application of equitable estoppel.

## XVI.

VA attempts to separate itself from the bad acts of the Department of Defense.[11]  Yet, VA serves as part of one Government.  The VA benefits system compensates veterans based on their service to the Government and their country, not to VA.  VA merely serves as the intermediary between the Treasury and the worthy veteran.  Any argument that the appellant is not entitled to equitable relief from VA ignores congressional intent and the reason this Court was created. VJRA, 102 Stat. 4105 (codified, as amended, in various sections of 38 U.S.C. (2006 ed. and Supp. III)) §§ 7251, 7252(a) (2006 ed.).

## XVII.

"[F]iat justicia, ruat caelum, let justice be done whatever be the consequence."  *Somerset v. Stewart*, (1772) 98 Eng. Rep. 499 (K.B.) 509 (Lord Mansfield).  I would have assigned an effective date of 1971.  For these reasons, I respectfully dissent.

---

[11] VA does not dispute that it provided substances to the CIA suspiciously similar to those used during the Edgewood Arsenal experiments, and that it conducted separate human trials of LSD testing.  *Vietnam Veterans of America v. Central Intelligence Agency*, No. C 09-0037 CW, 2013 WL 6092031, at *26-27 (N.D. Cal. 19, 2013).  The claim that VA participated in the experiments has never been debunked.  *See id.*

## Certificate of Service

I certify that on the 30th day of October, 2019, the foregoing opening brief was electronically filed through CM/ECF system with the Clerk, United States Court of Appeals for the Federal Circuit. Copies of the document were served through the Court's CM/ECF system via the Notice of Docket Activity to:

William J. Grimaldi, Esq.
Department of Justice
Civil Division, Commercial Litigation Branch
william.j.grimaldi@usdoj.gov

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com

## Certificate of Compliance

Pursuant to Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure, Appellant's counsel certifies that this Brief complies with the Court's type-volume limitation rules. This brief was printed in Garamond font at 14 points. According to the word-count calculated, using WordPerfect v.11, this Brief contains a total of 5081 words, which is within the 14,000 word limit.

/s/ Kenneth M. Carpenter
Kenneth M. Carpenter
**CARPENTER, CHARTERED**
1525 SW Topeka Blvd, P.O. Box 2099
Topeka, Kansas 66601-2099
(785) 357-5251
carpgh@mindspring.com