No. 19-2211

# In the United States Court of Appeals for the Federal Circuit

BRUCE R. TAYLOR, CLAIMANT–APPELLANT,

*v.*

DENIS MCDONOUGH, SECRETARY OF VETERANS AFFAIRS, RESPONDENT–APPELLEE.

*Appeal from the United States Court of Appeals for Veterans Claims in Vet. App. No. 17-2390, Judge William S. Greenberg, Judge Amanda L. Meredith, and Judge Joseph L. Falvey, Jr.*

## SUPPLEMENTAL BRIEF OF CLAIMANT–APPELLANT

MARK B. JONES
MARK B. JONES ATTORNEY AT LAW
*1203 Michigan Street*
*Sandpoint, Idaho 83864*
*Phone: (208) 263-0886*
*E-mail: thessaguy@hotmail.com*

LIAM J. MONTGOMERY
D. SHAYON GHOSH
ANNA HROM
TIMOTHY PELLEGRINO
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue, S.W.*
*Washington, DC 20024*
*Phone: (202) 434-5030*
*E-mail: LMontgomery@wc.com*

*Attorneys for Claimant–Appellant*

# INTRODUCTION

As the Supreme Court emphasized in *Arellano*, "[t]he United States offers benefits to any veteran who suffers a service-connected disability." *Arellano v. McDonough*, 143 S. Ct. 543, 546 (2023) (citing 38 U.S.C. §§ 1110, 1131). Mr. Taylor and his fellow Edgewood survivors deserve better than the myriad thinly-reasoned roadblocks the government has thrown in the way of that mandate, including the government's present effort to contort *Arellano* into a further reason to deny Mr. Taylor what he has long been due. *Arellano* does not support the government's case. It supports Mr. Taylor's.

# ARGUMENT

## I. *Arellano* Further Supports Estopping the Government.

The government is wrong that *Arellano* provides it yet another reason to deny Mr. Taylor relief. *See* Notice (Feb. 17, 2023), ECF No. 93. To the contrary, it all but disposes of the Secretary's principal argument on estoppel—namely, that *Office of Personnel Management v. Richmond*, 496 U.S. 414, 432 (1990), precludes this Court from estopping the government when public monies are at stake.

Joined by veterans' groups and another Edgewood veteran, Mr. Taylor filed an amicus brief with the Supreme Court in *Arellano*, in which he argued

in favor of equitable tolling, and also noted that this Court had before it both the constitutional right of access to the courts and equitable estoppel issues that remain pending. Brief of Edgewood Veterans et al. as Amici Curiae Supporting Pet'r 11, *Arellano v. McDonough*, No. 21-432 (U.S. May 20, 2022). With that brief before it, Edgewood veterans were discussed during the *Arellano* oral argument. *See* Tr. Oral Arg. 28:18–30:23, *Arellano v. McDonough*, No. 21-432 (U.S. Oct. 4, 2022). Thus, with Edgewood veterans like Mr. Taylor fresh in the Court's conscience, it expressly left open "the applicability of other equitable doctrines, such as waiver, forfeiture, and estoppel." *Arellano v. McDonough*, 143 S. Ct. 543, 552 n.3 (2023).

This is significant, because the government had argued in *Arellano*, as it does here, that *Richmond* prohibited any effort to "displace substantive statutory limitations on the amount of benefits to which veterans are entitled." *See* Resp't's Br. 36–37, *Arellano v. McDonough*, No. 21-432 (U.S. July 18, 2022). Thus, in clarifying that equitable estoppel remains open after its ruling in *Arellano*, the Court had before it the same precedent the government uses here to argue against equitable estoppel.

It is not hard to discern why the Supreme Court left open other equitable doctrines even as it closed the door on equitable tolling: Doctrines like

estoppel bar litigants from taking advantage of time limits like those found in § 5110(b)(1) when a litigant "takes active steps to prevent the plaintiff from suing in time"—just as the government did to Mr. Taylor for decades. *See, e.g., Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). That contrasts with equitable tolling, which affords litigants extra time to file suit even if their adversary played no part in the failure to timely file. *See id.* at 451; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 192 (1997).

As it considered equitable tolling, the Supreme Court also emphasized the importance of Congress's choice to design § 5110(b)(1) as it did. *Arellano*, 143 S. Ct. at 550. Allowing a veteran equitable tolling, the Supreme Court explained, would "disrupt" that design. *Id.* at 551. But because equitable estoppel focuses not on the litigant but rather on the wrongful acts of the government, the converse is true here: By barring the Executive Branch from using threats of criminal prosecution to disrupt Congress's carefully designed veterans' benefits scheme, equitable estoppel prevents the *Executive Branch* from disrupting Congress's design, thereby vindicating the principle that the Supreme Court enunciated in *Arellano*.

In short, far from providing "a basis for this Court to affirm," as the government asserts, *Arellano* in fact supports Mr. Taylor's position.[1]  This Court should reverse.

## II. The Government Radically Undermined and Violated Congress's Mandates.

More is at stake in this case than just the design of Section 5110.  Allowing the government to use threats of criminal prosecution as they did against Edgewood veterans like Mr. Taylor would thwart Congress's entire statutory scheme for veterans' benefits, from the very outset of that process.

Shortly before Mr. Taylor left active service, Congress "charg[ed] the Veterans' Administration with the affirmative duty of seeking out eligible veterans" and providing them with congressionally appropriated benefits and services. 38 U.S.C. § 240 (1970).  This statutory duty included that the agency "shall provide" outreach services advising each veteran at discharge about available benefits and services and aiding and assisting the presentation of the

---

[1] The Supreme Court did not address constitutional right of access at all, leaving that additional basis for relief untouched.  Mr. Taylor stands on his en banc opening and reply briefs on this doctrine.  Appellant's En Banc Br. 49–65, ECF No. 41; En Banc Reply Br. 18–32, ECF No. 80.

veteran's claim.  38 U.S.C. § 241(1)–(3) (1970), *recodified as amended at* 38 U.S.C. § 6303 (2021).[2]

To be sure, "the manner in which those services are to be provided has been left to the discretion of the agency," *Younger v. Turnage*, 677 F. Supp. 16, 22 (D.D.C. 1988), and Mr. Taylor is not asking this Court or any other to impose its own view on precisely how the agency does so.  *See Rodriguez v. West*, 189 F.3d 1351, 1355 (Fed. Cir. 1999).  There is no dispute that the VA's ordinary negligence in failing to provide a form or reach an individual veteran with notice of the availability of benefits as provided in § 241 and its successor statutes does not extend the effective-date provision of 38 U.S.C. § 5110(b)(1).  *Andrews v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003); *Rodriguez*, 189 F.3d at 1355.

But Mr. Taylor suffered the effects of far more than ordinary negligence. In 1969, Mr. Taylor swore under penalty of criminal prosecution to "not divulge or make available *any information* related to U.S. Army Intelligence Center interest *or participation in* the . . . Army Medical Research Volunteer Program to any individual, nation, organization, business, association, or other

---

[2] Exhibit A contains the text of 38 U.S.C. §§ 240 and 241 (1970), which were the versions of the statute in effect at the time of Mr. Taylor's discharge.

group or entity, not officially authorized to receive such information." Appellant's En Banc Br. 8–9, ECF No. 41 (emphases added) (quoting S. Rep. No. 94-755, at 418 (1976)).  Mr. Taylor did not apply for veterans benefits as a consequence of this oath.  Appx077.

In the years that followed, the government was fully aware of the plight of veterans from Edgewood and similar programs but took no action to remedy the situation.  For example, in 1979, the General Counsel for the Army acknowledged "the legal necessity for a notification program" for Edgewood participants still suffering from their experiences.  *Viet. Veterans of Am. v. CIA*, No. C 09–0037 CW, 2013 WL 6092031, at *3 (N.D. Cal. Nov. 19, 2013) (citation omitted) (subsequent history omitted).  Through the 1980s, the Army developed multiple recordkeeping systems so that the Army could "contact individuals who participated in research . . . in order to provide them with newly acquired information, which may have an impact on their health." *Id.* at 4 (citation omitted).  This continued into the 1990s, when "several reviews of military human subject research programs . . . noted the common practice of research volunteers signing 'secrecy oaths' to preclude disclosure of research information," which "reportedly inhibited veterans from discussing

health concerns with their doctors or seeking compensation from the Department of Veterans Affairs for potential service-related disabilities." *Id.* at *6 (citation omitted) (quoting 2011 Department of Defense memorandum). Yet, even as the government acknowledged its own malfeasance for decades, it took until 2006 for it to partially relieve Edgewood veterans like Mr. Taylor from criminal jeopardy by finally allowing them to provide to the VA the minimum details required to seek health care and apply for benefits, to include the very existence of the Edgewood program. Appellant's En Banc Br. 15 n.5 (quoting Appx032).

These actions unmistakably violate Congress's instructions in sections 240 and 241, a point Mr. Taylor made to the Veterans Court more than a decade ago. *See* Appx112, Appellant's Br., U.S. Court of Appeals for Veterans Claims (2012) ("This entire 'process' of forced silence and failure to release records . . . was allowed by the VA who is the sole provider of the [Disability Compensation Benefits] program."). Thus, Mr. Taylor does not ask the Court to redesign the agency's discretionary program: It asks the Court to prevent the government from doing the *exact opposite* of what Congress mandated in those statutes. *See Kelly v. United States*, 826 F.2d 1049, 1052 (Fed. Cir. 1987); *see also* Appellant's En Banc Br. 20–49 (citing additional cases).

Conversely, the government's arguments would stand *Richmond*—a separation of powers case—"on its head" by allowing the government to take advantage of its brazen encroachment on Congress's powers to design the veterans' benefits system. *Brush v. Off. of Pers. Mgmt.*, 982 F.2d 1554, 1563–64 (Fed. Cir. 1992). As explained in Mr. Taylor's en banc brief, "when the executive misuses its power to thwart Congress's clear dictates, the injury to separation of powers is different not only in degree, but in kind to that which occurred in *Richmond*." Appellant's En Banc Br. 36; *see also* En Banc Reply 13–16. Simply put, *Richmond* is not a sword that can be used "when an agency fails to carry out a statutory duty at a detriment to the other party and a benefit to itself." *Brush*, 982 F.2d at 1563–64; *see also Dachniwskyj v. Off. of Pers. Mgmt.*, 713 F.3d 99, 102 (Fed. Cir. 2013).

The first concurrence with the Court's March 1, 2023 Order suggests that cases like *Rodriguez* and *Andrews* may be "in tension" with cases like *Brush*. Concurrence to Order (Dyk, J.) 5–6 (Mar. 1, 2023), ECF No. 95. However, the Court need not address this potential tension as to veterans' benefits as a whole, as *Brush*, *Rodriguez*, *Andrews*, and *Arellano* all fit comfortably with the unique facts of this case. That is, whatever the government's affirmative duties may be to veterans in the ordinary course under §§ 240 and 241

8

and their successor statutes—a question not before this Court—it is clear that these and other statutes and regulations do impose upon the government an affirmative duty not to punish veterans for failing to follow an undisclosed, unwritten "minimal claims" procedure the government has suggested existed in 1971. Gov't En Banc Br. 48–49, ECF No. 74.

Of course, when pressed by the Court to produce any evidence that this "minimal claim" procedure was recorded in VA publications or manuals before 2006, the government came up empty. Gov't Letter, ECF No. 90 ("VA has undertaken this search and has been unable to locate any manual or other publication that addresses" a pre-2006 "policy that was clarified in 38 C.F.R. § 3.156(c) (2006)"); *see also* En Banc Oral Arg. 1:2:24–1:3:9. But even taking the government at its word that such a procedure was available, it failed to meet its obligation to make this procedure known to veterans like Mr. Taylor.

The government effectively concedes this point, explaining that it did not "communicat[e] to Mr. Taylor that he could file a minimal claim" because to contact him "would have required DOD to provide his name . . . to VA while the program was classified." Gov't En Banc Br. 10; *see id.* at 53–54. The government's silence plainly did not comply with its "affirmative duty of seeking out eligible veterans . . . and providing them with" benefits, 28 U.S.C. § 240

(1970), and of "advis[ing] each veteran . . . of all benefits . . . for which the veteran may be eligible," *id.* § 241(1).

In fact, the government went beyond mere silence. In addition to the strictures imposed by the secrecy oath, the VA's forms at the time of Mr. Taylor's discharge further communicated that a minimal claim was *not* then available. In order to file a claim for benefits, Mr. Taylor would have had to disclose the very facts as to which the government swore him to secrecy. Ex. B (VA Form 21-528 (1971)) §§ 23, 25A–D, 27A–D. In fact, the 1971 VA Form 21-528 required applicants to "certify" that all "statements are true *and complete* to the best of [the applicant's] knowledge and belief," subject to "severe penalties which include fine or imprisonment, or both." Ex. B at 6 (emphasis added). Thus, rather than suggesting that a "minimal claim" in 1971 was available, the government effectively told him the opposite.

Without the light of judicial scrutiny shining upon it, the government has repeatedly acknowledged that, until 2006, secrecy oaths blocked veterans like Mr. Taylor from accessing health care and benefits to which the law entitled them. *See, e.g.*, *Viet. Veterans of Am.*, 2013 WL 6092031, at *6 (2011 Department of Defense memorandum discussing 1990s reviews of military human

10

subject research programs). It is undisputed that the Veterans Benefits Administration's June 30, 2006 letter was the first notification letter that informed Edgewood "veterans of benefits to which they may be entitled." Appx034.

This merits estoppel. The government has long understood that secrecy oaths instruct veterans that they may *not* file claims for benefits related to classified programs, and the government admittedly lifted this barrier in 2006 for the first time. Hence, the government violated even the minimum statutory duties in 38 U.S.C. §§ 240 and 241 because it swore veterans like Mr. Taylor to oaths of secrecy that barred them from applying for benefits and failed to inform any of them that they could file a minimal claim.

As this Court has held, "There is no indication that the holding in *Richmond* was meant to apply when an agency fails to carry out a statutory duty at a detriment to the other party and a benefit to itself." *Brush*, 982 F.2d at 1564. The government should be estopped from denying benefits to Mr. Taylor during the period in which it instructed Mr. Taylor that he was not permitted to access veterans benefits and simultaneously enforced his silence.

## CONCLUSION

More than 50 years have passed since Mr. Taylor's honorable discharge from the Army. Sixteen of those years have been spent litigating this case. Mr. Taylor is now 72 years old. He has battled cancer three times, including his current battle with service-connected liver and lung cancers. Whether viewed through the lens of equitable estoppel or as a violation of Mr. Taylor's constitutional right of access, or both, the government's conduct was active, knowing, and wrong. As Mr. Taylor outlined during oral argument and in his en banc briefing, and as further elaborated here, this case should be resolved without delay in Mr. Taylor's favor.

Dated: March 15, 2023

Respectfully submitted,

/s/ *Liam Montgomery*
LIAM MONTGOMERY
  *PRINCIPAL ATTORNEY*
D. SHAYON GHOSH
ANNA HROM
TIMOTHY PELLEGRINO
WILLIAMS & CONNOLLY LLP
  *680 Maine Avenue, S.W.*
  *Washington, D.C. 20024*
  *Phone: (202) 434-5030*
  *Fax: (202) 434-5029*
  *E-mail: lmontgomery@wc.com*

MARK B. JONES
MARK B. JONES ATTORNEY AT LAW
*1203 Michigan Street*
*Sandpoint, Idaho  83864*
*Phone: (208) 263-0886*
*E-mail: thessaguy@hotmail.com*

*Counsel for Appellant Bruce R. Taylor*

## CERTIFICATE OF SERVICE

I, Liam J. Montgomery, counsel for Appellant and a member of the Bar of this Court, certify that, on March 15, 2023, a copy of the attached Supplemental Brief of Claimant–Appellant was filed with the Clerk and served on the parties through the Court's electronic filing system.

MARCH 15, 2023                                 /s/ *Liam J. Montgomery*

                                               LIAM J. MONTGOMERY