**2019-2211**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### BRUCE R. TAYLOR,

#### Claimant-Appellant,

v.

### DENIS MCDONOUGH,
#### Secretary of Veterans Affairs,

#### Respondent-Appellee.

On appeal from the United States Court of Appeals for
Veterans Claims in No. 17-2390, Judge Joseph L. Falvey, Jr.,
Judge William S. Greenberg, Judge Amanda L. Meredith

## RESPONDENT-APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

OF COUNSEL:

PATRICIA M. McCARTHY
Director

BRIAN D. GRIFFIN
Deputy Chief Counsel

L. MISHA PREHEIM
Assistant Director

CHRISTOPHER O. ADELOYE
Staff Attorney
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC 20420

WILLIAM J. GRIMALDI
Assistant Director
Commercial Litigation Branch
Department of Justice, Civil Division
PO Box 480, Ben Franklin Station
Washington, D.C. 20044
Telephone (202) 616-0471
william.j.grimaldi@usdoj.gov

March 29, 2023

Attorneys for the Respondent-Appellee

# TABLE OF CONTENTS

ARGUMENT ................................................................................................. 2

I.    The Supreme Court In Arellano Rejected Applying Additional Equitable Doctrines To Section 5110 ................................................ 2

II.   Arellano Establishes That Application Of The Additional Exception Of Equitable Estoppel To Section 5110 Would Disrupt Congress's Statutory Scheme ............................................................................ 4

III.  Arellano Confirms That Application of Equitable Estoppel To Section 5110 Is Barred By The Appropriations Clause ......................... 7

IV.  The VA's Notification Statutes Offer No Reason To Equitably Estop Section 5110 ..................................................................................... 9

CONCLUSION .......................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Andrews v. Principi,*
  351 F.3d 1134 (Fed. Cir. 2003) .................................................. 11

*Arellano v. McDonough,*
  143 S. Ct. 543 (2023)....................................................*passim*

*Bond v. United States,*
  572 U.S. 844 (2014)........................................................ 9

*Brush v. OPM,*
  982 F.2d 1554 (Fed. Cir. 1992) ................................................ 7

*Hemphill v. New York,*
  142 S. Ct. 681 (2022)........................................................ 9

*Office of Personnel Management v. Richmond,*
  496 U.S. 414 (1990).......................................................1, 7, 8, 14

*Rodriguez v. West,*
  189 F.3d 1351 (Fed. Cir. 1999) .............................................. 11

*United States v. Beggerly,*
  524 U.S. 38 (1998) .......................................................... 3

*United States v. Brockamp,*
  519 U.S. 347 (1997).......................................................... 2

*Zobrest v. Catalina Foothills School District,*
  509 U.S. 1 (1993)........................................................... 10

**Constitution**

Article I, § 9, clause 7............................................................*passim*

ii

**Statutes**

38 U.S.C. § 241 (1970) ........................................................9, 10, 12

38 U.S.C. § 5102 ................................................................... 53

38 U.S.C. § 5103A ................................................................ 13

38 U.S.C. § 5110 ............................................................*passim*

38 U.S.C. § 6303 ................................................ 9, 10, 11, 12, 13

38 U.S.C. § 7722 (1999) ......................................................... 11

Pub. L. 109-233 ..................................................................... 11

**RESPONDENT-APPELLEE'S SUPPLEMENTAL *EN BANC* BRIEF**

———————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT**

———————————————————

**2019-2211**

———————————————————

**BRUCE R. TAYLOR,**
**Claimant-Appellant,**

**v.**

**DENIS MCDONOUGH,**
**Secretary of Veterans Affairs, Respondent-Appellee.**

———————————————————

The circumstances of Bruce R. Taylor's military service present a sympathetic case for the provision of an earlier effective date for benefits. But, as we detailed in our *en banc* response brief and at argument, neither the Executive nor Judicial branches can apply equitable estoppel here because to do so would require the payment of appropriated funds not authorized by statute. *See* Constitution, Art. I, § 9, cl. 7; *Office of Personnel Management v. Richmond*, 496 U.S. 414 (1990).

On January 23, 2023, the Supreme Court unanimously affirmed this Court's judgment in *Arellano v. McDonough*, holding that 38 U.S.C. § 5110(b)(1) is not subject to equitable tolling. 143 S. Ct. 543, 552 (2023). Although the *Arellano* decision does not address the applicability of equitable estoppel to 38 U.S.C. § 5110

(an issue that was not before the Court), the Supreme Court's reasoning demonstrates that Mr. Taylor's request to apply equitable estoppel not only conflicts with the Appropriations Clause, but also Congress's statutory scheme for veterans benefits.

## ARGUMENT

## I.    The Supreme Court In *Arellano* Rejected Applying Additional Equitable Doctrines To Section 5110

In *Arellano*, the Supreme Court rejected applying equitable tolling to section 5110 because there was good reason for the Court to believe that Congress did not want this equitable doctrine applied to the statute.  143 S. Ct. at 548 (citing *United States v. Brockamp*, 519 U.S. 347, 350 (1997)).  The Supreme Court held that "[s]ection 5110 contains detailed instructions for when a veteran's claim for benefits may enjoy an effective date earlier than the one provided by the default rule[,]" and that "[i]t would be inconsistent with this comprehensive scheme for an adjudicator to extend effective dates still further through the doctrine of equitable tolling."  *Id.*

Specifically, examining the text of the statute, the Supreme Court explained that subsection (a)(1) provides the default rule for earlier effective dates, and instructs that "[t]he default applies '[u]nless specifically provided otherwise in this chapter[.]"  143 S. Ct. at 548.  The Court continued that this text indicates "that

Congress enumerated an exhaustive list of exceptions, with each confined to its

specific terms." *Id*. The Court identified the 16 exceptions in section 5110 and

explained that "these exceptions do not operate simply as time constraints, but also

as substantive limitations on the amount of recovery due." *Id*. at 549.

The Supreme Court continued that "many" of these exceptions contained

equitable considerations, but, for all but one of these exceptions, Congress

nonetheless "capped retroactive benefits at roughly one year." *Id*. Focusing on this

"pattern" in the statute, the Supreme Court held that Congress's "account[ing] for

equitable factors in setting effective dates strongly suggests that it did not expect an

adjudicator to add a broader range of equitable factors to the mix." *Id*. at 550.

Moreover, Congress's "decision to consistently cap retroactive benefits strongly

suggests that it did not expect open-ended tolling to dramatically increase the size

of an award." *Id*. The Court thus concluded that Congress had already considered

equitable concerns and limited the relief available, indicating that "'additional

equitable tolling would be unwarranted.'" *Id*. (quoting *United States v. Beggerly*,

524 U.S. 38, 48–49 (1998)).

Addressing the argument that "harsh results" may occur without equitable

tolling, the Court explained that "Congress could have designed a scheme that

allowed adjudicators to maximize fairness in every case." *Id*. at 550. But

3

"Congress has the power to choose between rules, which prioritize efficiency and predictability, and standards, which prioritize optimal results in individual cases." *Id* (citation omitted). The Supreme Court concluded that, in section 5110, "Congress opted for rules in this statutory scheme," and applying an "equitable extension . . . would disrupt that choice." *Id*.

## II.    *Arellano* Establishes That Application Of The Additional Exception Of Equitable Estoppel To Section 5110 Would Disrupt Congress's Statutory Scheme

Although the Supreme Court did not directly address the application of equitable estoppel – an issue not before it – its equitable tolling holding instructs that applying equitable principles to section 5110 (beyond those already contained in the statute's enumerated exceptions) is inconsistent with Congress's intent. Specifically, the structure of the statute precludes applying additional equitable principles, such as equitable estoppel, which provides this Court with a separate, statutory ground for rejecting Mr. Taylor's request for equitable estoppel.

Specifically, the Supreme Court in *Arellano* concluded that "Congress opted for rules in this statutory scheme, and an equitable extension of § 5110(b)(1)'s 1-year grace period would disrupt that choice." 143 S. Ct. at 550. It further determined that some of the 16 exceptions under section 5110 are equitable in nature, and found that "[i]f Congress wanted the VA to adjust a claimant's

4

entitlement to retroactive benefits based on unmentioned equitable factors, it is difficult to see why it spelled out a long list of situations in which a claimant is entitled to adjustment—and instructed the VA to stick to the exceptions 'specifically provided.'" *Id*. at 549 (quoting 38 U.S.C. § 5110(a)(1)); *id*. at 550 ("That Congress accounted for equitable factors in setting effective dates strongly suggests that it did not expect an adjudicator to add a broader range of equitable factors to the mix.").

Accordingly, because the Supreme Court in *Arellano* held that the list of 16 exceptions in section 5110 is exclusive such that equitable tolling is unavailable, the same exclusivity should apply to equitable estoppel, which is also not on the list of exceptions.

In an effort to avoid the Supreme Court's reasoning for rejecting equitable tolling in section 5110, Mr. Taylor argues that equitable tolling and equitable estoppel are separate doctrines. ECF No. 96-1 at 3. But any difference between these doctrines is of no matter. As *Arellano* explains, when Congress drafted section 5110 it included only certain equitable doctrines in the enumerated exceptions, despite being aware of the panoply of equitable doctrines. *See* 143 S. Ct. at 550. Thus, Congress has already considered equitable concerns in section 5110, and judicially adding equitable estoppel to section 5110's exceptions would

5

be just as "unwarranted" as adding equitable tolling. *Id*. (quotation omitted).

For similar reasons, the first concurrence's statement that "the Supreme Court invited this court to consider non-constitutional equitable doctrines as an alternative to equitable tolling" is incorrect. ECF No. 95 (*Dyk, J.* concurring, at 1-2) (citing *Arellano*, 143 S. Ct. at 552 n.3). Nothing in the third footnote of *Arellano* invites courts to apply equitable doctrines to section 5110. Rather, the footnote is simply a recognition that the only issue before the Supreme Court was the application of equitable tolling. *See Arellano*, 143 S. Ct. at 552 n.3. Moreover, as we detail above, although only equitable tolling was before the Supreme Court, its interpretation of section 5110 leaves no room for the application of unenumerated equitable doctrines, such as equitable tolling, to the statute.

In sum, section 5110, as interpreted by the Supreme Court, leaves no room for equitable estoppel. As the Secretary has recognized throughout this appeal, Mr. Taylor has endured significant hardships both during and after his service. But as the Supreme Court noted in *Arellano*, "the nature of the subject matter cannot overcome statutory text and structure" in section 5110 that forecloses the application of equitable doctrine not specifically enumerated within the statute. 143 S. Ct. at 552.

6

### III.   *Arellano* Confirms That Application of Equitable Estoppel To Section 5110 Is Barred By The Appropriations Clause

*Arellano* not only provides a statutory basis for rejecting the application of equitable estoppel to section 5110, but also provides further support for a constitutional basis.

In our *en banc* response brief and at argument, we demonstrated that granting Mr. Taylor's claim of entitlement to an earlier effective date under the doctrine of equitable estoppel would be contrary to statutory appropriations and thus barred by the Appropriations Clause. *See Richmond*, 496 U.S. 414. Mr. Taylor had argued that the Appropriations Clause should not bar his recovery because he meets the substantive requirements for the receipt of benefits. ECF No. 41 at 35 (citing *Brush v. OPM*, 982 F.2d 1554, 152-63 (Fed. Cir. 1992)). We demonstrated, however, that Mr. Taylor did not meet section 5110's substantive requirements and thus the Appropriations Clause barred his request for an earlier effective date. ECF No. 74 at 31 (citing ECF No. 41 at 35). Specifically, "although Mr. Taylor *currently* meets the requirements for receipt of benefits (and is receiving them), the record does not reflect that he meets the requirements *for an effective date* before the date of his 2007 application." *Id*.

The *Arellano* decision confirms this, as the Supreme Court concluded that the exceptions in section 5110 impose "substantive limitations on the amount of

recovery due." 143 S. Ct. at 549. Similarly, section 5110(a)(1) imposed a substantive requirement upon Mr. Taylor to receive an earlier effective date – he must have submitted an application for benefits in order to receive an earlier effective date. It is undisputed that Mr. Taylor did not submit an application before 2007, and thus it follows that he does not meet the application requirement for an earlier effective date.[1]

Accordingly, although *Arellano* did not directly address *Richmond* or the Appropriations Clause, the decision confirms that Mr. Taylor's claim of entitlement to an earlier effective date under the doctrine of equitable estoppel would be contrary to statutory appropriations and thus barred by the Appropriations Clause.

In his supplemental brief, Mr. Taylor contends that *Arellano* "all but disposes" of our reliance on *Richmond* and the Appropriations Clause. ECF No. 96-1 at 1. Mr. Taylor assumes that because the Supreme Court was aware of both the Edgewood Program and the respondent's reliance on *Richmond* in *Arellano*, but ruled solely on a statutory basis, the Supreme Court must believe that the

---

[1]  Mr. Taylor repeats his substantive requirement argument in his supplemental brief, citing *Brush* to argue that the Government cannot rely upon the Appropriations Clause to avoid its statutory duty. ECF No. 96-1 at 8. His reliance on *Brush* is thus misplaced, because the claimant in that matter "effectively met" the statutory requirements. 982 F.2d at 1563.

Appropriations Clause is no barrier to applying equitable estoppel to section 5110. ECF No. 96-1 at 1-2. This is specious logic. The Supreme Court did not address equitable estoppel because only equitable tolling was before it. *See, e.g., Hemphill v. New York*, 142 S. Ct. 681, 693 (2022) (declining to address an issue because it "presents different issues that are not before this Court"). Moreover, in *Arellano*, the Supreme Court avoided ruling on any constitutional prohibition to the application of an equitable doctrine to section 5110 because it disposed of the matter on a statutory (non-constitutional) basis. *See Bond v. United States*, 572 U.S. 844, 855 (2014).

## IV.    The VA's Notification Statutes Offer No Reason To Equitably Estop Section 5110

Following invitation from the first concurrence, Mr. Taylor proffers a new argument for application of equitable estoppel to section 5110's earlier effective date limitations – the VA allegedly violated its statutory duty to notify Mr. Taylor of his eligibility to receive benefits. ECF No. 96-1 at 4-10.[2]

But as the second concurrence correctly identifies, this alleged violation of a statute "has never been presented." ECF No. 95 (*Moore, C.J.*, concurring at 1). This Court should refrain from "devis[ing] new statutory grounds under the guise of

---

[2]    Mr. Taylor refers to 38 U.S.C. § 241(1)-(3), which has been subsequently recodified as 38 U.S.C. § 6303. ECF No. 96-1 at 4-5.

constitutional avoidance." *Id*. at 2 (citing *Zobrest v. Catalina Foothills School District*, 509 U.S. 1, 7–8 (1993)). Although the first concurrence states that this is not a new issue, it concedes that it raises an "additional statute" that VA may have violated. ECF No. 95 (*Dyk, J.* concurring at 7). Neither party raised section 6303 or its predecessor before the panel or in the *en banc* briefing. Accordingly, consideration of a new statutory violation at this late stage of proceedings is unwarranted.

Moreover, this argument suffers from the same flaw as Mr. Taylor's previous equitable estoppel argument – granting Mr. Taylor's claim of entitlement to an earlier effective date under the doctrine of equitable estoppel would be contrary to statutory appropriations and thus barred by the Appropriations Clause.

Nevertheless, Mr. Taylor identifies no violation of section 241 that entitles him to an effective date earlier than the date of his original claim. In fact, his argument suffers from several fatal flaws.

First, it is well-settled that such benefit notification statutes provide no enforceable right because they do not "provide[] any remedy for breach" and instead "appear to be hortatory rather than to impose enforceable legal obligations

upon the Secretary." *Rodriguez v. West*, 189 F.3d 1351, 1355 (Fed. Cir. 1999)[3]; *see also Andrews v. Principi*, 351 F.3d 1134, 1137 (Fed. Cir. 2003); ECF No. 95 (*Moore, C.J.* concurring at 2).[4]  Accordingly, to the extent that the VA violated a notification statute, such a violation cannot warrant equitably estopping section 5110.

Second, even if the notification statute imposed enforceable obligations on the Secretary, which it does not, Mr. Taylor fails to identify a VA violation of that statute.  He fails to pinpoint any inaction or action by the VA that could rise to the level of a violation of the general notice provisions, and instead focuses on the actions of the Army.  ECF No. 96-1 at 6-7.  Mr. Taylor has been consistent in this regard, as he has repeatedly alleged that the *Army* presented him with a secrecy oath that precluded him from seeking benefits, not the *VA*.  ECF No. 41 at 8; ECF No. 12 at 6.

---

[3]  *Rodriguez* addressed 38 U.S.C. §§ 5102 and 7722(d) – the latter of which contained the notice provisions of current 38 U.S.C. § 6303(d) prior to its repeal in 2006.  *See* Pub. L. 109-233.

[4]  The first concurrence considers distinguishing this precedent on the grounds that, here, "the VA itself, in an official form, arguably communicated that Mr. Taylor was barred from seeking disability compensation while his secrecy oath was in effect." ECF No. 95 (*Dyk, J.* concurring at 5).  The record, however, contains no such VA form, and nor would it.  Mr. Taylor alleges that the Army presented him with a secrecy oath that precluded him from seeking benefits, not the VA.  ECF No 41 at 8; ECF No. 12 at 6.

When Mr. Taylor does address the actions of the VA, he bases his new argument upon a misinterpretation of the VA claim form, contending that language warning claimants of the penalty for filing a false or fraudulent claim somehow precludes the filing of a claim that does not include every detail. ECF No. 96-1 at 10 (citing ECF No. 96-3 at 7). We are unaware of any veteran who has been prosecuted for filing a minimal claim.

Indeed, when discussing the actions of the VA, Mr. Taylor's new argument becomes internally inconsistent. Mr. Taylor states that he does not request that the Court infringe upon the discretion afforded the Secretary in regard to outreach services, conceding that the VA's failure to notify a veteran of the potential for benefits does not extend the effective-date provision of section 5110. ECF No. 96-1 at 4-5. Yet Mr. Taylor later argues the opposite, contending that the VA's failure to notify him that he could file a minimal claim for benefits related to Edgewood prior to 2006 is a violation of a statute that warrants extending the effective-date provision of section 5110. *Id*. at 10-11.

Third, as the second concurrence identifies, equitably estopping the VA for an alleged notification violation requires an interpretation of section 6303 (or the previous section 241) that "create[es] a VA duty to assist veterans regarding filing for benefits even before they have filed claims." ECF No. 95 (*Moore, C.J.*

12

concurring at 2). That interpretation would conflict with the VA's duty to assist *claimants* set forth in 38 U.S.C. § 5103A. *Id.*

Moreover, this interpretation threatens the effective administration of benefits because it "would eliminate the claim filing as the triggering effective date for benefits." ECF No. 95 (*Moore, C.J.* concurring at 2). Instead, the interpretation would mandate that VA has a "duty to help [a] veteran file a claim[.]" *Id.* As the second concurrence correctly forecasts, "key[ing] the duty to assist in this case to the standard notice form every veteran receives upon discharge, if that notice was deficient, [would mean that] every veteran could claim benefits back to their notice date." *Id.* at 2-3. Further, although the first concurrence ties its section 6303 duty to assist to official VA forms or non-disclosures, "there are no such limiting principles" in the statute. *Id.* at 2-3 n.1. Accordingly, the proposed interpretation of section 6303 would likely spark a litany of duty to assist claims outside of official forms, such as interactions between veterans and VA caregivers. *See id.*

Fourth, Mr. Taylor ignores that nothing in the record indicates that VA was aware of his Edgewood participation upon his separation. A scheme requiring VA to notify veterans who participated in classified programs of their ability to file minimal claims would require the Department of Defense to provide the names of all classified program participants to VA while the program was classified. Such a

13

wholesale disclosure of the names of participants in a classified program defeats the point of classification.

## CONCLUSION

In *Richmond*, the Supreme Court explained that the Appropriations Clause ensures that only Congress makes the difficult judgments as to whom Federal funds should be paid. 496 U.S. at 428-29. The Court recognized that, in matters in which equity may counsel the payment of funds not authorized by statute, it is Congress, not the courts, that may exercise equitable power to assist individuals in need. *Id.* at 428, 431. In *Arellano*, the Supreme Court interpreted section 5110, holding that "Congress opted for rules in this statutory scheme," and applying an "equitable extension . . . would disrupt that choice." 143 S. Ct. at 550. Applying these decisions means that, here, neither the Executive nor Judicial branches can resolve Mr. Taylor's appeal for equity because it involves the payment of appropriated funds in a manner not authorized by statute.

Aware of the existence of other equitable doctrines, such as equitable estoppel, Congress opted to limit the equitable relief available to claimants under section 5110. Accordingly, resolution of Mr. Taylor's predicament lies solely with Congress and not the Executive or Judicial branches.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

Of Counsel:

/s/ L. Misha Preheim

BRIAN D. GRIFFIN
Deputy Chief Counsel

L. MISHA PREHEIM
Assistant Director

/s/ William J. Grimaldi

CHRISTOPHER O. ADELOYE
Staff Attorney
Department of Veterans Affairs
810 Vermont Avenue NW
Washington, DC  20420

WILLIAM J. GRIMALDI
Assistant Director
Civil Division
Department of Justice
PO Box 480, Ben Franklin Station
Washington, DC 20044
Tel: (202) 616-0471
william.j.grimaldi@usdoj.gov

March 29, 2023

Attorneys for Respondent-Appellee